Charles O. FISHER, t/a S & G Garage,
Appellant,

v.

PARKWOOD, INCORPORATED, Appellee.

No. 3775.

District of Columbia Court of Appeals.

Argued Sept. 8, 1965.

Decided Oct. 25, 1965.

Rehearing Denied Nov. 12, 1965.

Herman Miller, Washington, D. C., with whom T. Emmett McKenzie, Washington, D. C., was on the brief, for appellant.

Charles E. Chisholm for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge:

On November 18, 1960, Rhea Brill and Blanche Jacobson entered into a written lease with appellant for the rental of certain premises for a term of five years ending November 30, 1965. Included therein were the following provisions:

> "25. In the event a bona fide offer to purchase the property is received other than from a Municipal or Federal Agency, the lessee shall have fifteen (15) days in which to match whatever offer is acceptable to the lessors.

> "26. In the event the purchaser herein referred to should desire possession, the lessee agrees to vacate on ninety (90) days written notice."

By letter dated December 31, 1962, the lessors informed appellant they had received an acceptable offer to purchase the property and that they would proceed with the sale unless he exercised his option to purchase the property by meeting this offer within fifteen days. Appellant did not do so. On July 30, 1963, appellee acquired title to the property and two days later, August 2, 1963, exercising its right as purchaser to terminate the lease, gave appellant ninety days' written notice to vacate. The parties thereafter attempted to negotiate a new lease for the continued occupancy of the property by appellant, during which time he remained in possession, paying the same monthly rental as stipulated by the original lease. When negotiations proved fruitless, appellee, on December 23, 1964, gave appellant thirty days' notice in writing to vacate. This was followed on January 8, 1965, by a reminder that the owners were expecting appellant to leave. Appellant refused to honor these notices, stating he would rely on his original lease and remain until the end of its term. On March 24, 1964, appellee filed suit for possession and obtained a judgment for that purpose on May 21, 1965, from which this appeal ensued.

The only assignment of error is the entry of a judgment for possession against appellant who contends he was still occupying the property under a valid, existing lease.

As the facts are uncontroverted, we are confronted only with questions of law: Did appellee have authority under the cancellation clauses of the lease to terminate it and to evict appellant upon his refusal to vacate? Was the ninety-day notice effective to terminate the lease? Did permitting appellant to remain in possession and accepting rent after the initial notice to quit amount to a waiver? We are satisfied these questions must be answered in favor of appellee.

It is firmly established that a party may terminate a contract by virtue of an express provision thereof. It is not unusual for such termination provisions to be included in lease agreements, especially where the future sale of the property is contemplated. Where a lease provides for termination upon the sale of the leased property, the lease is *ipso facto* terminated upon compliance by the lessor with the terms of the cancellation provision. So, too, if the lease so provides, a purchaser from the lessor may terminate a lease upon the giving of the prescribed notice. Morlee Sales Corp. v. Manufacturers Trust Co., 9 N.Y.2d 16, 172 N.E.2d 280, 210 N.Y.S.2d 516 (1961). In reason and in law we have no difficulty finding that appellee as purchaser could and did cancel the lease in conformity with its terms and that the lease was effectively terminated upon the expiration of the ninety days given in the notice of August 2, 1963. See DeSales Street Corp. v. Broadcasting Publications, D.C.Mun.App., 144 A.2d 545 (1958); Bhar Realty Corp. v. Becker, 49 N.J.Super. 585, 140 A.2d 756 (1958).

Appellant argues, however, that even if appellee could cancel its lease by giving the ninety-day notice referred to in Paragraph 26 of the lease, appellee

waived its cancellation by continuing to accept the monthly rentals and permitting him to remain in possession. In this connection appellant relies on Basiliko Inv. Corp. v. United Cigar-Whelan Stores Corp., 83 U.S.App.D.C. 274, 168 F.2d 567 (1948). There the court held that the lease limited the purchaser's privilege of cancellation to the time of acquiring title, or at least prior to any act which recognized the existence and continuation of the tenancy, and that by accepting the rent for three months after title was secured before giving notice, the purchaser had acknowledged the tenancy and waived its right to cancel as successor in title. In the case before us we have a vital factual difference. Here appellee did nothing inconsistent with the exercise of its right to terminate and almost immediately upon acquiring title gave notice to quit. Allowing appellant thereafter to remain in possession and accepting rent during the period that the parties attempted to negotiate a new lease was not tantamount to either a revival of the already-cancelled lease or a waiver of the notice to quit. Receipt of rent after the lease was cancelled was merely for use and occupancy during the hold-over period.

A notice to quit, however, is not the equivalent of court process but is simply a notice given privately from one party to another terminating or attempting to terminate the landlord-tenant relationship and is without judicial effect unless followed by court action. 45 D.C.Code, 1961 § 906; Craig v. Heil, D.C.Mun.App., 47 A.2d 871 (1946), citing Hardebeck v. Hamilton, 50 App.D.C. 113, 268 F. 703, 704 (1920); Custis v. Klein, D.C.Mun.App., 177 A.2d 268, 269 (1962). Appellee's delay in taking earlier court action to oust appellant can be directly attributable to an attempt on its part to amicably terminate their relationship and allow appellant time to relocate when they were unable to negotiate a new lease. When appellant persistently refused to surrender possession, appellee then had to bring a possessory action to effect appellant's eviction.

There is no question as to the status of appellant after he remained in possession following the expiration of the ninety-day notice. He became a hold-over tenant or tenant by sufferance. 45 D.C.Code, 1961 § 820. Such new tenancy was then subject to termination upon thirty days' notice to quit. 45 D.C.Code, 1961 § 904; Arsenault v. Angle, D.C.Mun.App., 43 A.2d 709 (1945). This notice was duly given to appellant and, upon his failure to vacate, judgment for possession in favor of appellee was properly entered.

Affirmed.