155 N.J. Super. 254 (1978)
382 A.2d 688
JASONTOWN APARTMENTS, PLAINTIFF-APPELLANT,
v.
THERESA LYNCH; VINCENT AND ANNE HAAS; DANIEL AND LAURA PAULITSKA; JOHN AND LOIS KORTES; DOUGLAS AND CATHERINE HARRIMAN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 7, 1977.
Decided January 11, 1978.
*255 Before Judges ALLCORN, MORGAN and HORN.
Messrs. Goodman and Stoldt, attorneys for appellant (Mr. Richard D. McLaughlin, on the brief).
No brief was filed on behalf of respondents.
PER CURIAM.
Plaintiff landlord appeals the trial court dismissal of its complaint seeking dispossession of defendant tenants for violation of the terms of their respective leases which prohibited the keeping of pets. The case was decided on the following stipulation of facts:
1. That CIB International, Inc. is the managing agent for Jasontown Apartments.
2. That there are approximately 674 apartment units at Jasontown Apartments.
3. That each defendant is a tenant at Jasontown Apartments under a written lease containing a provision prohibiting the keeping of pets.
4. That defendants Lynch and Harrison own cats and keep them at their apartments at Jasontown.
*256 5. That defendants Paulitska, Kortes, Haas and Ippolito own dogs and keep them at their apartments at Jasontown.
6. As to defendants' separate defenses:
LYNCH: Plaintiff continued to accept defendants' rent; after having sent notice of termination and instituting this action plaintiff has given three present tenants written permission to keep dogs.
PAULITSKA: Plaintiff cannot verify or dispute that defendant received oral permission from the superintendent at Jasontown Apartments since the superintendent who allegedly gave permission is no longer employed by the plaintiff. Plaintiff cannot verify or dispute that an unidentified person gave defendant permission at an "office" which is also unidentified.
HARRIMAN: Harrimans' lease was renewed on October 14, 1975 for two years after notice of termination was served on them.
KORTES: For the reason stated in Paulitska, plaintiff cannot verify or dispute that defendant received verbal permission from an apartment superintendent and an unidentified man in the office when the lease was signed.
HAAS: Defendants have lived in their apartments for two years with a dog and that only three present tenants have been given written permission to keep dogs.
7. That no defendant in this action has been given a written waiver from the management office at CIB.
8. That it is the policy at CIB to require that any lease modification be written.
9. That apartment superintendents at Jasontown Apartments have no authority from the management office to negotiate or vary terms and conditions of any tenant's lease.
10. That apartment superintendents are not permitted by CIB to collect rent from tenants.
11. That the superintendents from which defendants state they received permission to keep pets are no longer employed by CIB.
*257 12. That the lease provision in question is required by the New Jersey Housing Finance Administration which funded Jasontown Apartments.
13. That a substantial amount of animal waste has accumulated on the grounds of Jasontown Apartments as a result of having of pets by tenants. Such accumulation constitutes a health hazard and is also unsightly.
14. That plaintiff has received general complaints from tenants, the local Board of Health and rent board concerning dogs at Jasontown.
15. That defendants are willing to remain as tenants at Jasontown if the Court renders judgment by possession to plaintiff and plaintiff is willing to allow a reasonable time for defendants to remove their pets from the premises.
16. The rules and regulations in question are reasonable.
17. Defendants do not claim any defense other than that set forth herein.
18. That tenants other than defendants herein own and maintain pets at Jasontown Apartments.
Summarized, the stipulation discloses that defendant tenants are occupying apartments in plaintiff's apartment complex while in violation of a rule forbidding pets which is part of their respective leases and which was a required part thereof by the New Jersey Housing Finance Administration, the agency which provided the financing for construction of the complex. The rule being admittedly violated is conceded to be a reasonable one, an admission supported by the stipulation concerning accumulations of animal waste found around the premises, the resulting complaints from other tenants, the board of health and the rent board. Moreover, nothing suggests that the landlord is merely seizing upon this violation as a subterfuge to oust the tenants; rather, the stipulation that the leases would be continued if the tenants would cease keeping pets emphasizes the landlord's legitimate insistence upon compliance with this reasonable term of the tenancy.
*258 Notices to terminate were served upon the tenants during the middle portion of May 1975, all to be effective on July 1, 1975. The leases, therefore, subsisted by the consent of the landlord and tenants until that day. Rent for June 1975 was received pursuant to the lease. It was stipulated, however, that the landlord continued to accept rent for all subsequent months despite the fact that the lease was specified in the notices as terminating on July 1, 1975. It was this fact which underlay the trial judge's disposition of the case.
Judgment is entered in favor of the defendants and against the plaintiff dismissing the complaints on the grounds that the collection of rents by the landlord after service of notice to terminate constitutes a waiver as a matter of law. Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116, 129 (1967).
Plaintiff's appeal is predicated upon the proposition that, in the given circumstances, a conclusion of waiver cannot be reached as a matter of law based solely upon the receipt of rent following service of the notices to terminate or initiation of the dispossess action. It argues, with considerable persuasive force, that its acceptance of the rent for June 1975 was on account of the lease which, by consent and by operation of the notices to terminate, continued in full force and effect until July 1, 1975. Hence, acceptance of that month's rent was in no way inconsistent with its notice to terminate.
As to the acceptance of rent on months subsequent thereto, plaintiff contends that since defendants were in full occupancy of the premises they remained liable for the value of the occupancy, a value measurable by the rent which they had been paying. Accepting discharge of this liability for use and occupation should not, in plaintiff's view, be deemed as a matter of law an act inconsistent with the position taken in the notices of termination and hence is not a waiver.
To hold otherwise would, plaintiff urges, encumber a landlord's right to terminate a tenancy for valid and sufficient reasons, with a practical forfeiture of rent for substantial *259 periods commencing with service of the termination notice and ending only with a successful dispossession. The more lenient a landlord's conduct is with respect to his tenants, such as affording a longer notice of termination or delaying dispossess to afford a tenant time to relocate, would only increase this forfeiture since during this period rent or monies representing the value of the occupancy would only be collectible at the sacrifice of the landlord's right to terminate.
Generally, waiver, traditionally defined as an intentional relinquishment of a known right, is regarded as a conclusion of fact to be arrived at or rejected on the basis of evidence adduced. North v. Jersey Knitting Mills, 98 N.J.L. 157, 159 (E. & A. 1922); Plassmeyer v. Brenta, 24 N.J. Super. 322 (App. Div. 1953). It is only where one conclusion can be reached on the facts adduced that it becomes a matter of law. Id. Plaintiff's central contention is that on the stipulated facts no conclusion of waiver can be reached as a matter of law, rejecting the notion that acceptance of rent following service of a notice to terminate or institution of an action seeking possession of premises ipso facto is a waiver.
Carteret Properties v. Variety Donuts, 49 N.J. 116, 129 (1967), appears, however, to take a contrary position, at least when the language therein is taken literally. In Carteret, however, the alleged breach of lease was neither admitted nor clear. There the lease limited the tenant's use to the sale of "donuts, coffee and the incidental sale of cold sandwiches, together with juices, soft drinks, pre-packaged ice cream [and] machine vended cigarettes." The tenant's activity of selling bus tickets to its patrons was long known to the landlord and the latter's dissatisfaction with this activity, if any, was never made known to the tenant. Thereafter, a new lease with the original landlord's successor in title was made which permitted the tenant to operate "as heretofore." Thereafter, the lease was yet again assigned to another who sought the tenant's ouster, alleging that sale of the *260 bus tickets so long tolerated constituted a breach of the lease provisions. The notice of termination required vacation of the premises within five days of the receipt thereof.
The court in Carteret found the notice to terminate defective, holding that the landlord's judgment must, on that ground alone, be reversed. The remaining portions of the opinion provided guidelines in the event of a retrial on a consent to amendment of the notice or on initiation of a new dispossess action. Accordingly, it noted that the evidence concerning breach, stipulated facts as in the present matter, was insufficient to permit a conclusion one way or the other. A plenary hearing, including reception of live testimony, was required. Again, in aid of the trial court in the event of a retrial, the court considered the tenant's claim of waiver and it is in this context that the court's language must be considered.
Finally defendant urges that plaintiff waived any claimed breach of covenant by accepting monthly rent for so long a period. In answer plaintiff refers to the lease provision that failure of the landlord to insist upon strict performance of lease covenants in one or more instances "shall not be construed as a waiver" of breaches occurring thereafter. There is no doubt that acceptance of rent with knowledge of the breach, if any, constitutes a waiver of all past breaches. East Orange v. Bd. of Water Com'rs, etc., 41 N.J. 6, 18 (1963); Plassmeyer v. Brenta, 24 N.J. Super. 322, 330-331 (App. Div. 1953). Plaintiff had received all rent due until the end of the month of November 1965. Acceptance of the November rent waived all breaches prior to the date plaintiff received it. The notice to terminate the tenancy was served on November 6, 1965 and the issue of waiver must be determined as of that day. A decision cannot be reached on the present record. The date when the November rent was paid does not appear. Was it before the notice to terminate was served? Whenever it was paid, were there any sales of bus tickets between that date and the notice to terminate? If not the defense of waiver must be sustained. (Conduct engaged in by the parties since institution of this suit by agreement has been without prejudice.) In this connection also principles of equitable estoppel cannot be ignored. Since the sale of tickets had been engaged in for so long to the landlord's knowledge, during which time the regular rent had been tendered and accepted, thus creating a waiver of the alleged breaches, equity and good conscience would require reasonable notice from the landlord to the tenant to discontinue the practice *261 and from thenceforth to abide by the use limitation of the lease. Unless such notice was served and bus tickets sold thereafter, equity should bar forfeiture of the lease.
We cannot consider this language apart from its context. In Carteret the court was dealing with a questionable allegation of breach of lease consisting of conduct which had been known and tolerated not only by the original lessor, but by his successor as well, for well over five years. In these circumstances not only was acceptance of rent, and the failure to object to the conduct later condemned as a breach, evidential on whether a breach occurred but was, in the court's view, conclusive of a waiver of a breach, if indeed there was a breach. It should be emphasized that the court did not state that acceptance of rent following service of a notice to terminate constituted conduct of a type repelling the normal rule that waiver is, except in unusual circumstances, an issue of fact. Rather, we conclude that despite the generality of the language used, the court was simply concluding that under the stipulated facts of that case waiver had been shown as a matter of law. We cannot interpret the case as holding that in every dispossess action, whatever its facts, and no matter how clear the breach and no matter how clear the land's insistence upon compliance with lease provisions, a landlord must, in practical terms, forfeit rent following service of the notice to terminate or after institution of proceedings for possession, if he insists upon its effectiveness. We regard such a forfeiture in practical terms only, since, of course, the landlord retains the right, in any event, to institute action for the value of the occupancy after successful dispossession. The remedy afforded is, however, to a large extent illusory. The tenant must be found in his new residence, service must be made, another court appearance made, and most importantly, any judgment recovered must be collected. In many cases, the value of the occupancy and the costs necessarily incurred in collecting it may well dissuade a landlord from the attempt. A landlord's acceptance of a tenant's admitted liability for use and occupancy *262 should not result, as a matter of law, in loss of the right to seek dispossession.
As an example of Carteret's reliance upon the factual content of the case before it, the notice to terminate in that case was stipulated to become effective only five days, not 30 days or more, after its receipt. Hence, in Carteret the lease was to persist under the notice only five days after its receipt. Rent accepted after that five-day period could not, therefore, be on account of the lease. In this case, however, the notices provided for termination of the lease for periods up to a month and a half after receipt; hence the rent accepted for June cannot in this case, unlike Carteret, be viewed in any way other than as on account of a persisting and valid lease, not inconsistent with its existence but in conformity therewith. One cannot extrapolate from Carteret an inflexible rule that receipt of rent following notice to terminate the lease, irrespective of its running time thereunder, or following institution of a dispossess action, constitutes an act inconsistent with the notice which is then considered waived.
Authority elsewhere is divided. The better reasoned cases in our view hold in accordance with the following principle:
Waiver has been defined as "the intentional relinquishment of a known right." * * * "Acceptance of rent after a notice changing tenancy or after [a] notice to quit does not necessarily operate to waive the notice. While the unconditional acceptance by a landlord of moneys as rent, which rent as accrued after the time the tenant should have surrendered possession, will constitute strong evidence of the landlord's waiver of the notice to quit, waiver always rests on intent, and is ever a question of fact." [United Illuminating Co. v. Syntex Rubber Corp., 4 Conn. Cir. 303, 231 A.2d 89 (Cir. Ct. 1966)]
Other cases holding that acceptance of payment after a notice to quit provides merely evidence of waiver which nevertheless remains a question of intent are: Fisher v. Parkwood, Inc., 213 A.2d 757, 759 (D.C. Ct. App. 1969); Glad-Nan Corp. v. Henry's Drive-In, Inc., 29 Ill. App.2d 363, 173 *263 N.E.2d 521, 523 (App. Ct. 1961); Fogel v. Hogan, 496 P.2d 322, 324 (Colo. Ct. App. 1972); Curtis Realties v. Industrial Mill Products, 71 N.Y.S.2d 781, 782 (Sup. 1947). For cases taking a contrary view, holding that the mere acceptance of rent following expiration of the notice of termination constitutes a waiver as a matter of law, see Annotation, 120 A.L.R. 557, 562.
We conclude that the stipulated facts of this case do not, as in Carteret, establish waiver as a matter of law. Rather, receipt of the payments after the initiation of statutory dispossess proceedings provides only evidence of a waiver which should be considered together with all other existing circumstances in determining whether the defense of waiver has been sustained. If the trial judge concludes, from these facts, including the acceptance of payments in the amount of rent subsequent to initiation of the dispossess proceedings, that the landlord intended to waive the notice to quit and the breaches of lease upon which the notice to quit and the breaches of lease were based, then he should dismiss the complaint. If, however, he concludes that no such waiver was intended, then he should grant landlord the relief it seeks.
This issue cannot, however, be determined upon a stipulated set of facts; live testimony will be necessary. For example, among the factors to be considered is the fact, contained in the stipulation, that after instituting the present action, the landlord "has given three present tenants written permission to keep dogs." Consideration should be given to the reason such permission was granted and whether such circumstances and the permission conduce to a conclusion that landlord has waived all similar breaches of lease.
Moreover, each case must be considered separately. The stipulation notes that Harrimans' lease was renewed for two years after initiation of the dispossess proceedings; the judge should inquire as to the circumstances in which such renewal was granted  more particularly, whether the Harrimans gave up their pet as a condition to the renewal. The *264 record, however, is far too sparse and unaccountable to permit us to reach any conclusions at all.
The judgments are reversed and the matters remanded to the county district court for new trials in accordance with this opinion.