579 A.2d 373

RAMON MARINO, PLAINTIFF, v. FRANCES
MENDEZ, DEFENDANT.

Superior Court of New Jersey
Law Division Hudson County

Decided July 5, 1989.

*Jorge Aviles* for plaintiff.

*Mary Jane Brown* for defendant.

HORNSTEIN, J.S.C.

A solution in this matter requires an interpretation of the meaning of the word "owner" as stated in paragraph *l* (3) of the anti-eviction statute (*N.J.S.A.* 2A:18–61.1).

This is a complaint for dispossession of a subtenant by the primary tenant.

Based upon the relevant, credible testimony and the documentary evidence submitted, the following findings of fact are made.

On February 2, 1988, plaintiff, Ramon Marino, entered into an agreement with Central Gardens, Inc., the owner of a multi-family apartment house located at 1200–1202 Central Avenue, Union City. There are 15 dwelling units in that building.

The February 2, 1988 agreement between plaintiff and Central Gardens, Inc., granted Marino the option to purchase, as a condominium unit, apartment # 5 in the Central Avenue building. The purchase price was $45,000. A deposit of $5,000 on signing the contract was paid.

The agreement gave Marino the right to have immediate possession of apartment # 5 "as [a] buyer under the within option agreement to purchase said apartment dwelling unit and not as [a] month to month tenant."

Marino was to pay Central Gardens $500 a month beginning March 1, 1989 "and on the first of each and every month for the right to take immediate possession and to have the use and occupancy of said apartment dwelling unit prior to the final

approval of said apartment into an individual condominium unit."

On or about March 1, 1988, defendant Mendez, with Marino's permission, moved into the apartment. She had the apartment painted and moved her furniture into the unit.

On or about February 21, 1988, defendant gave Marino $500 as security toward rental of the apartment and $500 as the first month's rent. Thereafter, defendant paid $500 a month as rent to Marino until November 1988.

From December 1988 until February 1989, defendant paid $277.91 instead of $500 a month.

By letter dated November 3, 1988, Central Gardens notified Marino that renting his apartment to another person was in violation of the purchase agreement. And he was to "immediately remove the occupant in unit # 5."

A notice of termination from Marino dated November 23, 1988 terminating the tenancy as of January 31, 1989 was duly served on defendant. The service and contents of the notice are not in dispute.

Some of the rent checks from defendant to plaintiff were made payable to the order of "Ulises Marino." Ulises and Ramon Marino are one and the same person.

Beginning with the rent check dated February 1, 1989 and the checks dated thereafter, the checks were endorsed by plaintiff, "cashed as partial payment of rent without waiving any rights."

The gas, electric and telephone bills submitted into evidence are all in defendant's name as the occupant of apartment # 5 at 1200 Central Avenue, Union City.

Marino currently lives in a basement apartment in a building he owns at 912 Summit Avenue, Union City. The apartment is situated below a flower shop (one of three) also owned by Marino, located at street level. Sales items and supplies for the flower shop are kept in the basement where Marino lives.

The basement apartment rooms are small. He has one bed and he eats mostly in restaurants.

In a non-owner occupied residential building, a tenant may only be evicted pursuant to causes enumerated in *N.J.S.A.* 2A:18–61.1:

> No lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant may be removed by ... the Superior Court from any house, building, ... except upon establishment of one of the following grounds as good cause:

> . . . .

> *l* (3) The owner of a building of three residential units or less seeks to personally occupy a unit, or has contracted to sell the residential unit to a buyer who wishes to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing....

There has been no dispute or claim of waiver by reason of the acceptance of all or part of the rent paid by defendant-tenant to Marino. *Carteret Properties v. Variety Donuts, Inc.*, 49 *N.J.* 116, 129, 228 *A.*2d 674 (1967); *Jasontown Apartments v. Lynch*, 155 *N.J.Super.* 254, 261–263, 382 *A.*2d 688 (App.Div. 1978).

The terms lessor, lessee, landlord and subtenant are defined in 22 *N.J.Practice (LeWine, Landlord and Tenant Law) (3 ed. 1962), § 2:*

> A *lessor* is the grantor of a lease; one who conveys an estate in real property. The term 'lessor' is used interchangeably with 'landlord.' A *landlord* is the owner of real property which he lets to others in return for the payment of rent or other recompense. When he rents the real property which he owns, he becomes the lessor.

> A *lessee* is the grantee of a lease; the one to whom an estate in real property is conveyed. The term 'lessee' is used interchangeably with 'tenant.' A *tenant* is the holder of an estate in real property which he rents from the owner thereof. Strictly speaking, when a tenant acquires an estate in real property by virtue of a lease, he becomes the lessee.

> . . . .

> A *subtenant* is a tenant who holds an estate in lands by virtue of a lease made with one who has a larger estate in said lands which estate is held by the latter under a lease with the landlord or owner of the lands. The word 'subtenant' is used interchangeably with 'sublessee.' [at 2]

"The relation of landlord and tenant does not depend upon the lessors having title to the demised property and such relation may be created although the lessor is not the owner of the property." *Id.* at 11.

Also, as stated in *Berkeley Dev. v. Great Atlantic & Pacific Tea,* 214 *N.J.Super.* 227, 518 *A.*2d 790 (Law Div.1986):

> It is well established that a subletting creates the relationship of landlord and tenant between the sublessor and the sublessee. There is no privity of contract, *Wehrle v. Landsman,* 23 *N.J.Super.* 40, 46 [92 *A.*2d 525] (Law Div.1952); *Baum [v. Tazwell], supra,* 26 *N.J.Misc.* [292] at 295, [61 *A.*2d 12 (Cir.Ct.1948)] or estate between the landlord and the subtenant with the lessee standing as a buffer between the landlord and the subtenant.... [214 *N.J.Super.* at 235, 518 *A.*2d 790]

■ Based upon the facts as hereinabove established, a landlord-tenant relationship existed between Marino and Mendez. Mendez occupied the apartment with the permission of Marino. She paid rent each month to Marino. Her dealings with regard to the apartment were all with Marino. Marino reserved to himself his interest to purchase the apartment.

There was no assignment of Marino's interest in the apartment to Mendez. Mendez became a subtenant and Marino the sublessor.

■ The next question to be decided is: does the word "owner" in paragraph *l*(3) of *N.J.S.A.* 2A:18–61.1 include a sublessor of the owner of the building? Put another way, is the word "owner" as used in the statute synonymous with the word "landlord"?

The first paragraph of *N.J.S.A.* 2A:18–61.1 includes in its protection "under-tenant." An under-tenant is defined as "a tenant under one who is himself a tenant." *Black's Law Dictionary* (rev. 4 ed. 1968) at 1697. A "subtenant" is defined in *Black's* as: "An under-tenant; one who leases all or part of the rented premises from the original lessee for a term less than that held by the latter." *Id.* at 1598. An "under-tenant" and a "subtenant" are one and the same.

As between the owner of a building in which an under-tenant or subtenant resides, and the under-tenant, there is no privity of contract. There is no agreement between those parties. *Berkeley Dev. v. Great Atlantic and Pacific Tea, supra;* 22 *N.J.Practice, supra,* § 1051 at 659.

If an under-tenant is a protected occupant in a multi-family dwelling, it must be that the under-tenant's lessor is bound by the provisions of the Anti–Eviction Statute, *N.J.S.A.* 2A:18–61.-1. A sublessor would have no authority to evict his tenant unless there is full compliance with the provisions of that statute.

"Construction of a statute that renders any part of it inoperative, superfluous, or meaningless is to be avoided. *Paper Mill Playhouse v. Millburn Tp.,* 95 *N.J.* 503, 521 [472 *A.*2d 517] (1984)." *447 Associates v. Miranda,* 115 *N.J.* 522, 530, 559 *A.*2d 1362 (1989).

If a subtenant failed to pay his rent when due, the sublessor would certainly be able to bring an action for possession for nonpayment of rent or for any of the other grounds for eviction as specified in the statute.

As previously observed, a landlord need not be the owner of the building in which the tenant resides. 22 *N.J.Practice, supra,* § 3, at 11.

Since there is no privity of contract—no landlord-tenant relationship—between a subtenant (or an under-tenant) and the building's owner, a subtenant could not be dispossessed by the owner. Only the sublessor, the subtenant's landlord, could evict the subtenant.

To grant the subtenant (under-tenant) the protection of *N.J. S.A.* 2A:18–61.1 would be meaningless if that under-tenant's lessor (landlord) did not have the authority to act under the statute and to be bound by the restrictions of that law.

The sublessor is governed by all the provisions of the statute. This includes subparagraph *l* (3).

In effect the sublessor is the "owner"—the landlord—of the unit rented to the subtenant (under-tenant). The word "owner" as used in subparagraph *l*(3) is synonymous with the word "landlord."

Marino, as "owner"—"landlord" of unit #5 in 1200–1202 Central Avenue, Union City, has the power to invoke the provisions of subparagraph *l*(3) of *N.J.S.A.* 2A:18–61.1.

I find that he sincerely desires to occupy that apartment as his residence, and there is a need for him to so occupy that apartment. His present living quarters are found to be inadequate.

Judgment for possession is granted to plaintiff.