NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0101-15T2

MANSIONS APARTMENTS,

 Plaintiff-Respondent,

v.

TONIANN HUSBAND,

 Defendant-Appellant.
_______________________________

 Argued March 23, 2017 - Decided April 18, 2017

 Before Judges Lihotz and Whipple.

 On appeal from Superior Court of New Jersey,
 Law Division, Camden County, Docket No. LT-
 4743-15.

 Sonia Bell argued the cause for appellant
 (South Jersey Legal Services, Inc., attorneys;
 Ms. Bell, on the brief).

 Thomas M. Pohle argued the cause for
 respondent (Greenblatt & Lieberman, LLC,
 attorneys; Mr. Pohle, on the brief).

PER CURIAM

 Defendant Toniann Husband appeals from a July 9, 2015 judgment

of possession granted to her landlord, plaintiff Mansions

Apartments, and an August 20, 2015 order denying her emergent
application for reconsideration. Judgment was granted premised

on the trial judge's finding defendant continuously violated the

lease agreement by allowing an unauthorized tenant to occupy the

premises, despite a written Notice to Cease, issued pursuant to

N.J.S.A. 2A:18-61.1(e)(1). Defendant argues the evidence was

insufficient to prove a lease violation and maintains plaintiff

accepted rent after the judgment was issued, creating a new

tenancy. We reject these arguments and affirm.

 Plaintiff owns and operates a 360-unit apartment complex in

Pine Hill, which is federally subsidized through the Department

of Housing and Urban Development (HUD) Section 8 awards. See 42

U.S.C.A. § 1437f. In 2007, defendant commenced her tenancy in a

one-bedroom apartment located in plaintiff's complex. She

executed a lease agreement, identifying she was the sole occupant

of the premises and qualified for a Section 8 housing subsidy,

which satisfied defendant's entire monthly rent.

 On March 24, 2015, plaintiff issued a notice demanding

defendant cease activity, which violated the lease. Specifically,

the notice instructed plaintiff to cease conduct identified as:

(1) disturbing the peace, including "disturbances and heavy

traffic in and out of [the] apartment," "loitering, numerous guests

and other disturbances," and (2) "harboring a female unauthorized

 2 A-0101-15T2
occupant, Michelle Dea,1 in the leased premises." The notice

warned defendant's failure to cease the impermissible activity and

remove the unauthorized occupant within ten days would result in

the landlord's termination of the lease.

 A "Notice Terminating Lease" was issued on April 27, 2015,

citing defendant's failure to comply with the prior Notice to

Cease, by her continued conduct of "disturb[ing] the peace and

quiet of other residents" and "harboring a female unauthorized

occupant, Michelle Dea, in the leased premises as well as three

(3) other adult unauthorized occupants and multiple children."

The notice further instructed defendant "must quit and vacate said

premises on or before May 31, 2015."

 Plaintiff filed a summary dispossession complaint alleging

defendant failed to adhere to the Notice to Cease by disturbing

the peace and allowing Dea to occupy her apartment. Trial was

conducted on July 9, 2015. Plaintiff proceeded solely on the

unauthorized occupation of the unit and withdrew the disturbing

the peace allegations.

 Plaintiff introduced the lease and issued notices, and

presented testimony from Assistant Property Manager, Dawn Brandt

1 At trial defendant stated her friend's surname was spelled
"Dey," which appears throughout the transcript. However, the
certification filed by the party used "Dea," which we have accepted
as the correct spelling of her surname.

 3 A-0101-15T2
and a maintenance employee, Jesse White. Defendant testified on

her own behalf.

 Brandt, who assumed the position of assistant property

manager in 2012 and manager in 2015, worked seven days per week

from 6:30 a.m. to 5 p.m. She identified provisions in defendant's

lease and discussed Section 8 requirements limiting occupation of

the unit solely to defendant.

 Next, Brandt related her personal knowledge of Dea's use of

defendant's apartment. Dea went to Brandt's office seeking to

lease a unit and handed Brandt her driver's license, which listed

defendant's unit as her address. Brandt inquired how Dea was

living in the complex and was told she lived "with a friend." This

prompted the issuance of the Notice to Cease.

 Further, Brandt, who opens and closes the complex playground,

located adjacent to defendant's unit, observed Dea "coming and

going," at "all different times of the day" "[e]very day[,]" "even

on the weekends," after defendant was issued the notice. Brandt,

referring to Dea, emphasized: "She's always, always, always

there." In addition, Brandt stated she saw "numerous children

. . . always in there" and an adult male and females in addition

to Dea in the unit. Brandt explained HUD guidelines require strict

compliance with the occupation guidelines, which determines the

 4 A-0101-15T2
amount of rent paid by HUD.2 On cross-examination, Brandt

acknowledged Dea's mother and daughter live in plaintiff's

complex.

 White testified he works as a maintenance technician at the

Mansions, from 7 a.m. to 4 p.m. He asserted he knew defendant and

personally observed Dea coming and going on a daily basis from

defendant's unit.

 Next, defendant testified. She identified Dea as "[o]ne of

[her] best friends" but insisted she lives alone in her unit and

Dea "never" lived with her, but once spent the night two years

earlier. Defendant asserted Dea lives in Camden and visits

"[m]aybe two or three times [per] month," while seeing relatives,

and other friends in the complex. She also explained Dea is

friendly with defendant's neighbor, and "is very well known in the

Mansions."

 Defendant refuted Brandt's testimony stating Dea was not at

the complex all spring because she underwent knee replacement

surgery. When asked a second time how frequently Dea visits,

defendant replied: "Whenever she's in town . . . probably like

sometimes twice, three times a week. Or a couple times a month

2 In a recent opinion we discussed in more detail federal
standards affecting lease provisions of leaseholds subject to the
Section 8 public housing subsidy program. See 175 Executive House,
LLC v. Miles, __ N.J. Super. __ (2017) (slip op. 6-8).

 5 A-0101-15T2
. . . I haven't even seen her in the past couple months . . . at

all." Then added: "But . . . she just came to see me yesterday

actually" as she "visits for a couple hours and then she goes and

wanders all around the Mansions."

 Addressing Brandt's testimony, defendant, on direct

examination, said Dea's driver's license lists the address of

Dea's sister in Blackwood. On cross-examination, however,

defendant responded Dea "don't [sic] even have a driver's license."

 The trial judge issued an oral opinion at the close of

testimony. He noted the inconsistencies in defendant's testimony

regarding the frequency of Dea's visits and the address listed on

Dea's driver's license. The trial judge labeled defendant's

testimony "a fabrication," stating he found her "completely

unbelievable, incredible and not telling the [c]ourt the truth."

On the other hand, the judge found Brandt's testimony "completely

credible," "uncontroverted," and supported by White's

observations. Limiting his findings to Dea's occupation of the

unit, the trial judge found Dea presented a driver's license to

Brandt listing defendant's unit as her address. This, along with

the observations by Brandt and White, established Dea's

unauthorized use of defendant's apartment. The judge granted

plaintiff's request for a judgment of possession and denied

defendant's request for a stay pending appeal.

 6 A-0101-15T2
 Defendant was served with a warrant for removal, and on August

5, 2015, filed a pro se order to show cause seeking a hardship

stay. The motion judge stayed the execution of the warrant for

removal until August 15.

 On August 12, 2015, defendant filed a second order to show

cause, seeking reconsideration of the judgment of possession. Her

supporting certification requested the judgment be vacated, while

acknowledging she was a frequent visitor, insisted Dea did not

live with her. Dea also filed a certification stating she does

not live with defendant, certifying she resides in Camden. She

asserted her license was copied when she applied for a unit at the

Mansions, which would prove she did not use defendant's address.

Therefore, Brandt's failure to produce the copy was suspect. Dea's

certification attached copies of documents listing her name and a

Camden address; her driver's license was not among them.

 Additionally, defense counsel filed a memorandum in support

of the order to show cause, arguing plaintiff "accepted full rent

paid on the tenant's behalf for the following month[s] of June"

and July, 2015, despite the effective date of the "Notice of

Termination," listed as May 31. Defendant argued this "acceptance

of payment" "effectively created a new tenancy," which was not

terminated.

 7 A-0101-15T2
 Following the August 20, 2015 motion hearing, the motion

judge denied defendant's motion for reconsideration. Plaintiff

thereafter locked defendant from the apartment. Defendant filed

this appeal.

 Before this court, defendant moved for emergent relief to

seek restoration of possession. The motion was denied. Plaintiff

moved to supplement the record, which we granted on May 24, 2016.

See R. 2:5-5. The supplemental record includes the certification

of La Niece S. Lewis, the property manager of plaintiff's apartment

complex, relating a fire destroyed the unit formerly occupied by

defendant. Based on these facts, plaintiff sought to dismiss the

appeal, which we denied.

 Lewis also explained the circumstances surrounding

plaintiff's receipt of HUD funds following defendant's eviction.

She certified HUD electronically sends a lump sum transfer of

funds on behalf of all residents in the complex whose rent is

subsidized each month. While HUD paid the rental amount attributed

to defendant's unit after the notice to terminate was issued, the

funds were never accepted or applied by plaintiff, but were

"reversed and transferred back to HUD."

 In our review of an order following a bench trial, we defer

to a trial judge's factual findings, if "supported by adequate,

substantial and credible evidence." Rova Farms Resort, Inc. v.

 8 A-0101-15T2
Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974). "[W]e do not

disturb the factual findings and legal conclusions of the trial

judge unless we are convinced that they are so manifestly

unsupported by or inconsistent with the competent, relevant and

reasonably credible evidence as to offend the interests of

justice." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169

(2011) (quoting In re trust Created By Agreement Dated December

20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008)). Further,

"particular deference," attaches to credibility determinations,

RAB Performance Recov., LLC v. George, 419 N.J. Super. 81, 86

(App. Div. 2011), as the trial judge is in the best position to

observe the witnesses and hear them testify; Cesare v. Cesare, 154

N.J. 394, 412 (1998).

 Initially we address plaintiff's argument the appeal is moot

because defendant's unit was destroyed by fire. We reject the

argument.

 Ordinarily, where a tenant no longer resides
 in the property, an appeal challenging the
 propriety of an eviction is moot. See Ctr.
 Ave. Realty, Inc. v. Smith, 264 N.J. Super.
 344, 347 (App. Div. 1993). Here, however, the
 eviction carries residual legal consequences
 potentially adverse to defendant. That is, a
 tenant's federal subsidy may be revoked if
 that tenant "has been evicted from federally
 assisted housing in the last five years." 24
 C.F.R. 982.552(c)(ii).

 9 A-0101-15T2
 [Sudersan v. Royal, 386 N.J. Super. 246, 251
 (App. Div. 2005).]

Because defendant remains exposed to additional diverse

consequences, we decline to dismiss the appeal as moot. Ibid.

 We turn to defendant's assertion the judgment must be vacated

because plaintiff failed to prove a violation of the lease.

Defendant argues plaintiff's evidence showed only that Brandt and

White viewed Dea in the vicinity of defendant's apartment "coming

and going," which insufficiently proves she resided in the unit.

Further, she argues plaintiff's failure to produce a copy of Dea's

alleged driver's license using defendant's address should defeat

the assertion. We are not persuaded.

 The trial judge found Brandt and White's testimony credible

regarding seeing Dea consistently entering and exiting defendant's

apartment over an extended period. In contrast, the judge found

defendant's testimony "completely not credible," as it was replete

with inconsistencies and contradictions. We decline to disturb

the trial judge's credibility findings, which are well supported

by the record. Zaman v. Felton, 219 N.J. 199, 215-16 (2014).

 Additionally, the judge found Dea presented a driver's

license to Brandt, which listed defendant's address as her own.

Although defendant testified this was untrue, her added statements

that Dea used her sister's Blackwood address, lived in Camden, and

 10 A-0101-15T2
did not have a driver's license, were contradictions causing the

judge to reject defendant's testimony entirely, finding her not

truthful. We accept the trial judge's conclusion, giving deference

"to the trial court's factual findings . . . 'supported by

adequate, substantial and credible evidence.'" Toll Bros., Inc.

v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002) (quoting Rova

Farms, supra, 65 N.J. at 484).

 Defendant also argues the motion judge erred in denying

reconsideration. Plaintiff argues reconsideration was warranted

because Dea certified, stating she lived in Camden and not with

defendant. Further, plaintiff "accepted rent payments made on

[defendant]'s behalf" for the months of June, July and August

2015, "after the termination of the tenancy[,]" thereby voiding

the judgment of possession and establishing a new tenancy, which

was never terminated. These arguments are rejected.

 Reconsideration is a matter within the sound discretion of

the trial court. Capital Fin. Co. of Del. Valley, Inc. v.

Asterbadi, 398 N.J. Super. 299, 310 (App. Div.), certif. denied,

195 N.J. 521 (2008).

 As provided by Rule 4:49-2, a motion for reconsideration is

only granted under certain narrow circumstances, "in which either

(1) the [c]ourt has expressed its decision based upon a palpably

incorrect or irrational basis, or (2) it is obvious that the

 11 A-0101-15T2
[c]ourt either did not consider, or failed to appreciate the

significance of probative, competent evidence." Fusco v. Bd. of

Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div.)

(quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div.

1990)), certif. denied, 174 N.J. 544 (2002). Neither circumstance

is present here.

 Defendant's claim regarding Dea's residence was considered

at trial. Dea did not testify and defendant relied on her own

testimony regarding this issue. The certifications attached to

her motion do not provide newly discovered information, which was

unavailable at the time of trial. Consequently, we determine no

abuse of discretion is shown by the motion judge's denial of

reconsideration on this issue.

 Defendant also asserts plaintiff accepted rent payments after

notice to vacate was issued. She incorrectly contends the law

mandates acceptance of rents after issuance of a notice to quit

voids the judgment of possession.

 This argument misses the mark. N.J.S.A. 2A:18-61.1 lists

several "grounds for removal of tenants," including, subsection

(a), for failure to pay rent. However, plaintiff's June 11, 2015

complaint did not allege defendant failed to pay rent. Rather,

plaintiff alleged defendant violated her lease by hosting an

unauthorized occupant, Dea. Defendant's violation of the lease

 12 A-0101-15T2
was itself a separate ground for removal under N.J.S.A. 2A:18-

61.1(d). HUD's continued payment of rent on defendant's behalf,

the precise timing of which we express no opinion on, has no effect

on plaintiff's valid judgment of possession, obtained under

N.J.S.A. 2A:18-61.1(d). See Hous. and Redev. Auth. of Franklin

v. Mayo, 390 N.J. Super. 425, 432-34 ("Unlike [non-payment of]

rent, however, which can be cured retroactively, not all cases for

eviction can be completely cured"). A tenant's continued

compliance with another condition of the tenancy is immaterial,

once a landlord has obtained a valid judgment for possession based

on one of the enumerated statutory grounds of N.J.S.A. 2A:18-61.1.

Cf. Mayo, supra, 390 N.J. Super. at 434 ("[T]herefore, the question

[is] whether the late vacation of the premises by the unauthorized

persons constituted an adequate cure of this particular breach.").

 Defendant characterizes the issue as one of waiver, asserting

plaintiff accepted payment of rent from HUD on behalf of defendant,

which voided plaintiff's judgment for possession by establishing

a new tenancy. As we have noted, we disagree the issue of payment

of rent is material to plaintiff's right to seek eviction.

Nevertheless, waiver requires "the intentional relinquishment of

a known right." Jasontown Apartments v. Lynch, 155 N.J. Super.

254, 262 (App Div. 1978) (citation omitted). In Jasontown, "[a]

landlord's acceptance of a tenant's admitted liability for use and

 13 A-0101-15T2
occupancy" is rent and "should not result, as a matter of law, in

loss of the right to seek dispossession." Id. at 261-62. In this

matter, plaintiff proffered a certification from its property

manager stating plaintiff received a bulk transfer of funds from

HUD for rent for residents in the complex, but that defendant's

share of the bulk payment, for the time after the judgment of

possession was entered. However, before defendant vacated the

premises, the funds were returned to HUD. Plaintiff's receipt of

the bulk transfer would not constitute a waiver and establish a

new tenancy requiring a new judgment of possession. Id. at 262.

 Here, even assuming plaintiff accepted HUD payments on

defendant's behalf, there was no evidence of intent by plaintiff

to waive its right to seek dispossession as alleged in its

complaint. Further, the record establishes monies issued by HUD

were combined with rent from all units. Therefore, acceptance of

the bulk electronic transfer in and of itself was not an agreement

to waive its right regarding defendant's unit. Jasontown, supra,

155 N.J. Super. at 262. Finally, other than the HUD bulk transfer

issued to plaintiff, defendant offered no evidence from which

waiver could be established.

 We find no error. We conclude reconsideration of the judgment

of possession was properly denied.

 Affirmed.

 14 A-0101-15T2