**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0606-23

SEBASTIAN ROJAS-GOMEZ,

    Plaintiff-Appellant,

v.

JAMES TYLICZKA,

    Defendant-Respondent.

_____

Submitted November 6, 2024 – Decided January 23, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1413-20.

John V. Salierno, attorney for appellant.

Patrick O. Lacsina Law Offices, LLC, attorneys for respondent (Patrick O. Lacsina, Sr., on the brief).

PER CURIAM

    This landlord-tenant dispute arises from the rental of a basement apartment without a certificate of occupancy (CO). Plaintiff Sebastian Rojas-

Gomez, the tenant, lived in the apartment for almost three years. Plaintiff sued defendant James Tyliczka, the landlord, claiming breach of contract and fraud. Defendant then filed a counterclaim for unpaid rent and property damage. Plaintiff appeals from an August 6, 2021 Law Division order denying his motion for summary judgment and granting partial summary judgment to defendant for unpaid rent. After reviewing the record in light of the parties' arguments and governing legal principles, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. Defendant is the landlord for a non-owner-occupied property in Weehawken that contains two lawful residential units and one illegal basement unit. In October 2016, the parties entered into a lease for the basement apartment. Defendant asserts he advised plaintiff "that the rent for the [a]partment was substantially below market rate because it did not have a CO." Plaintiff paid a $1,500 security deposit and took possession of the apartment. From November 2016 to October 2019, plaintiff lived in the basement unit and paid monthly rent that was initially fixed at $1,000 and eventually rose to $1,050.

2

In August 2019, the Township of Weehawken issued violation notices to defendant for, inter alia, lacking a CO. In December, defendant filed a summary dispossess action based on nonpayment of rent. The trial court granted defendant a judgment for possession and warrant of removal.

On March 4, 2020, defendant filed another complaint against plaintiff for unpaid rent. Plaintiff vacated the apartment on March 16 and defendant returned the security deposit to plaintiff on April 10.

On April 7, 2020, plaintiff filed a complaint against defendant for breach of contract and fraud, seeking compensatory, consequential, and punitive damages. Defendant filed a counterclaim for unpaid rent and property damage to the apartment. In July 2021, plaintiff moved for summary judgment; defendant cross-moved for partial summary judgment on all issues except the property damage counterclaim.

On August 6, the trial court denied plaintiff's motion and granted defendant's motion. Defendant thereafter dismissed the counterclaim for property damage. This appeal followed.

Plaintiff argues defendant's failure to have a CO voids the lease under a novel theory that plaintiff calls an "implied warranty of legality." Relatedly, plaintiff contends the trial court misapplied the equitable factors set forth in

A-0606-23

McQueen v. Brown, 342 N.J. Super. 120, 128 (App. Div. 2001), aff'd, 175 N.J. 200 (2002). Plaintiff also posits the trial court erred in dismissing his complaint under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -227, in which he argued that renting the apartment without a CO constituted an "unlawful practice." Finally, plaintiff contends defendant waived his right to unpaid rent by failing to withhold that amount when he returned plaintiff's security deposit.

II.

Our review of a trial court's summary judgment order is de novo. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). We apply the same standards as the trial court when reviewing an appeal of an order granting summary judgment. Walker v. Atl. Chrysler Plymouth, 216 N.J. Super. 255, 258 (App. Div. 1987). Summary judgment should be granted when the pleadings and discovery show "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). A genuine issue of material fact exists when the discovery materials, "viewed in the light most favorable to the non-moving party, are sufficient to permit a rational

factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

It is also well-settled that "[b]are conclusions in the pleadings, without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." U.S. Pipe & Foundry Co. v. Am. Arb. Ass'n., 67 N.J. Super. 384, 399-400 (App. Div. 1961). "[O]nce the moving party presents sufficient evidence in support of the motion, the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists[.]'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (alteration in original) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)). Furthermore, a party offering no substantial or material facts in opposition to the motion cannot complain if the court takes as true the uncontradicted facts in the movant's papers. See Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 75 (1954); R. 4:46-5.

Turning to substantive legal principles, in Marini v. Ireland, our Supreme Court held that when a landlord rents an apartment, there is an implied warranty of habitability. 56 N.J. 130 (1970). Plaintiff asks us to extrapolate from that doctrine a new legal principle that he calls an implied warranty of legality. Plaintiff reasons that "if there is an implied warranty of habitability of the vital

A-0606-23

facilities of the premises, then there necessarily exists an implied warranty of legality of the premises." Because defendant lacked a CO for the apartment, plaintiff maintains he necessarily "lacked the authority to perform [the lease agreement] because he did not possess the legal right to rent the apartment." Thus, plaintiff posits, defendant forfeited his right to collect and keep plaintiff's rent payments.

Plaintiff cites no case law authority to support an implied warranty of legality in these circumstances and we decline to fashion any such new landlord-tenant doctrine, especially since the outcome of this appeal is informed by well-settled principles outlined in our decision in McQueen. We held in McQueen that the question of whether rent was legally owing depends on whether the lease is enforceable. 342 N.J. Super. at 126. The tenant in that case claimed the landlord's failure to obtain a CO rendered the lease void and thus the rent obligation unenforceable. 342 N.J. Super. at 120. In rejecting that contention, this court stated, "[w]e know of no precedent that would allow a tenant to raise an illegality defense to [their] obligation to pay rent in circumstances where no evidence is presented to demonstrate that the premises were uninhabitable or,

6

for that matter, that the premises were even defective." Id. at 128. We explained:

> [A] lease is not automatically void simply because the landlord failed to obtain an occupancy permit; other factors bear equitably on the problem . . . includ[ing] consideration of the public policy underlying the law that has been contravened, whether voiding the lease will actually further that policy, the burden or detriment to the respective parties if the lease is voided, and the benefit which the party seeking to avoid the bargain has enjoyed.
>
> [Ibid.]

Furthermore, we determined in McQueen that the policy underlying the CO requirement is designed to ensure that residential premises are "safe and habitable before a tenant moved into a dwelling unit by establishing an inspection and repair process for curing defects in the premises." Ibid. We concluded, "[t]hat policy is not advanced by a rule that would declare a lease void because the landlord did not obtain an occupancy permit." Id. at 128-129. We see no reason to depart from rationale we embraced in McQueen.

Here, it is undisputed that plaintiff and defendant entered into a lease whereby plaintiff would live in defendant's basement apartment in exchange for

A-0606-23

payment of rent. It is also undisputed that plaintiff remained in the apartment until March 2020. The trial court made the following findings:

> [H]ere, the [c]ourt finds that the only issue, as narrowed by . . . plaintiff on the record as to the unenforceability of the lease, is contended to be the lack of a certificate of occupancy. . . .
>
> . . . [T]he New Jersey Administrative Code 5:23-2.23b [] provides that, "[a] building or structure shall not be used or occupied in whole or in part until a formal certificate of occupancy shall be issued by the construction official." Again, both parties here knew that there was no CO and yet the plaintiff took possession . . .
>
> . . . .
>
> The [c]ourt has considered whether voiding a lease will further that policy. And, on balance, the [c]ourt finds that . . . plaintiff did get the benefit of living in the unit for years and . . . paid the rent on the premises, knew of the illegality before moving in and throughout the tenancy. So, therefore, the [c]ourt finds that the dicta in the case law that a tenant cannot live rent free despite the illegality outweighs . . . plaintiff's claim here, essentially asking for all of its rent back despite having lived in the premises for several years. And, again, that ties in with the [c]ourt's consideration of the benefit which the party seeking to avoid the bargain has enjoyed.

Applying de novo review, we agree with the trial court that public policy interests will not be advanced by rendering the lease at issue invalid given that plaintiff has not raised any typical habitability concerns during his three-year

tenancy. See McQueen, 342 N.J. Super. at 129 (holding that "the policy of protecting tenants from dangerous living conditions is not promoted by declaring a lease invalid in the absence of demonstrated serious housing violations, either at the inception of the lease, or thereafter"). Further, declaring the lease invalid after such a long period of residency would not only result in an unjustifiable burden to the defendant but also an undeserved windfall to the plaintiff. We thus conclude plaintiff accrued rent obligations throughout the period of time he resided in the basement apartment. See N.J.S.A. 2A:18-61.1(a); N.J.S.A. 2A:18-53(b).

## III.

We turn next to plaintiff's contention that the trial court erred in rejecting his CFA claim. Specifically, plaintiff argues that renting the apartment without a CO constitutes an "unlawful practice" under the CFA, and plaintiff's payment of rent constitutes an "ascertainable loss" within the meaning of the statute.

We have no quarrel with plaintiff's argument that the CFA can, in certain circumstances, apply to landlord-tenant contracts. In 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J. Super. 449, 461 (App. Div. 1988), for example, we concluded that "[t]he plain language of [N.J.S.A. 56:8-2] in its present form requires a conclusion that it applies to landlords as 'sellers' and

tenants as 'consumers' since it applies to the rental of real estate." However, we narrowed this broad application emphasizing, "we underscore that the [CFA] will only apply to extreme conduct of landlords sufficient to meet the condemned commercial practices set forth in N.J.S.A. 56:8-2." Id. at 469.

In that case, the extreme conduct of the landlord was failing to provide "the bare essentials of habitability[,]" as tenants testified the building was "without heat and some apartments without water[,] . . . infested with vermin, had many broken windows, had been invaded by squatters since doors and door locks were broken and was totally lacking any security." Id. at 455, 455. We noted that "[f]rom the evidence the jury could conclude that defendants did this in an effort to induce plaintiffs to move, either to enable defendants to increase the rents under the Rent Control Ordinance or to convert the building to condominiums." Id. at 466. The circumstances in the matter before us are starkly different from the situation in 49 Prospect St. Tenants Ass'n. Here, we see no extreme conduct by the landlord. Nothing in the record, moreover, suggests the living conditions in the basement apartment deteriorated at any time during the nearly three years that plaintiff resided there.

Furthermore, to prevail on a CFA claim, "a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by

plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Zaman v. Felton, 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and violations of regulations promulgated pursuant to the statute." Heyert v. Taddese, 431 N.J. Super. 388, 412 (App. Div. 2013). Under N.J.S.A. 56:8-2, "affirmative acts" are defined as:

> any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate.

We conclude, as did the trial court, that viewing the evidence in the light most favorable to plaintiff, he failed to establish an essential element of a CFA claim, namely that defendant made a material misrepresentation. New Jersey courts have held that "[a]n affirmative misrepresentation in the context of the [CFA] is 'one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase.'" Ji v. Palmer, 333 N.J. Super. 451, 462 (App. Div. 2000) (quoting Gennari v. Weichert

Co. Realtors, 288 N.J. Super. 504, 535 (App. Div. 1996), aff'd, 148 N.J. 582 (1997)).

In this case, nothing in the record supports the inference that plaintiff did not know about the apartment's lack of a CO and thus was wrongfully induced by a material misrepresentation to enter into the lease with defendant. At the motion's oral argument, counsel acknowledged, "there really is no disputed issue. And I think whichever way the Court comes down on . . . the issue summary judgment should be granted either . . . in . . . plaintiff's favor or defendant's favor. . . . [W]e don't dispute what happened. . . . [I]t's really purely an issue of law."

Furthermore, the trial court found:

> So here's the undisputed facts that I find in the record and the parties have told me on the record that they don't dispute the facts.
>
> . . . .
>
> October 2016, . . . plaintiff entered into a residential lease agreement with the defendant for a basement apartment at the location. And the defendant specifically advised the plaintiff that the monthly rent was very low because the premises did not have a certificate of occupancy. That fact is not disputed. So the [c]ourt finds it's undisputed that both parties knew and that . . . plaintiff assented to the fact that the apartment was illegal.

Based on our de novo review of the record, we agree with the trial court's findings and thus conclude that considering the evidence in the light most favorable to plaintiff, he has failed to establish that defendant made any false statement of fact and therefore cannot establish the first element of a CFA claim. See Ji, 333 N.J. Super. at 462; U.S. Pipe & Foundry Co., 67 N.J. Super. at 399-400.

IV.

Finally, we address plaintiff's contention that defendant waived his right to unpaid rent by returning plaintiff's security deposit without deducting the rent owed. Plaintiff argues that at a minimum, the act of returning the security deposit "create[s] a triable factual issue as to whether [defendant] waived his right to collect any unpaid rent." Since the trial court "did not engage in any waiver analysis," defendant adds, "a remand is warranted on this issue." We are unpersuaded.

It is undisputed that plaintiff paid a $1,500 security deposit to defendant prior to moving into the apartment. The parties also do not dispute that plaintiff stopped paying rent in November 2019, at which point defendant filed a summary dispossess action for nonpayment of rent and successfully obtained a warrant of removal. Four months later, on March 4, 2020, defendant filed a

complaint against plaintiff for the unpaid rent; plaintiff continued to live in the apartment until March 16. On April 10, defendant returned plaintiff's security deposit while the complaint for unpaid rent was still pending.

In landlord-tenant matters, the waiver doctrine has typically been applied to cases concerning whether a landlord waived the right to pursue an eviction by accepting a tenant's belated payment of rent. See Jasontown Apartments v. Lynch, 155 N.J. Super. 254 (App. Div. 1978); A.P. Dev. Corp. v. Band, 113 N.J. 485 (1988). In those cases, the waiver doctrine is "defined as an intentional relinquishment of a known right." Jasontown, 155 N.J. Super. at 259. It is "regarded as a conclusion of fact to be arrived at or rejected on the basis of evidence adduced" but it becomes matter of law where only "one conclusion can be reached on the facts adduced." Ibid.

Plaintiff cites no case law that extends the waiver doctrine to the return of security deposits as distinct from the acceptance of a late rent payment. The New Jersey Rent Security Deposit Act (SDA), N.J.S.A. 46:8-19 to -26, requires "[w]ithin 30 days after the termination of the tenant's lease or licensee's agreement, the owner or lessee shall return . . . the sum so deposited . . . less any charges expended in accordance with the terms of a contract, lease, or agreement, to the tenant." N.J.S.A. 46:8-21.1. Failure to comply with the SDA

can subject a landlord to double liability on the unreturned security deposit. Ibid.

Notably, the SDA does not state whether a landlord must mandatorily offset unpaid rent before returning the deposit, or whether the failure to do so constitutes a waiver of the right to collect unpaid rent. We emphasize the plain language in the statute refers only to "charges expended [by the landlord] in accordance with the terms of a contract, lease, or agreement." We decline to read into the statute a requirement the Legislature chose not to include. See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted) ("We cannot 'write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment,' or 'engage in conjecture or surmise which will circumvent the plain meaning of the act.'").

We add that even if the waiver doctrine were deemed to apply to this situation, the record refutes that defendant was aware of any such waiver rule—which he argues does not exist—thus rebutting the principal waiver requirement that defendant "intentional[ly] relinquish[ed] . . . a known right." See Jasontown, 155 N.J. Super. at 259.

We add that defendant had already initiated a separate action to obtain the unpaid rent before he returned the security deposit. Defendant did not withdraw

15

that complaint when he returned the security deposit. This supports the conclusion that defendant's return of the security deposit does not constitute a knowing and intentional waiver of his right to collect unpaid rent.

To the extent we have not specifically addressed them, any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0606-23