67 N.J. Super. 384 (1961)
170 A.2d 505
UNITED STATES PIPE AND FOUNDRY COMPANY, A CORPORATION, PLAINTIFF-RESPONDENT,
v.
AMERICAN ARBITRATION ASSOCIATION, UNITED STEELWORKERS OF AMERICA, CIO-AFL, LOCAL UNION NO. 2026, UNITED STEELWORKERS OF AMERICA, CIO-AFL AND LEON BORKOWSKI, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 1961.
Decided May 9, 1961.
*386 Before Judges GOLDMANN, FOLEY and LEWIS.
Miss Ruth Rabstein argued the cause for appellants (Pellettieri & Rabstein, attorneys).
Mr. W. Louis Bossle argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This appeal, taken pursuant to leave granted, brings up for review a Chancery Division order, entered December 9, 1960, denying defendants' motions (1) for summary judgment and (2) to dissolve a temporary restraint granted July 1, 1960, enjoining defendants from proceeding to arbitrate the status of defendant Borkowski "as though he were a beneficiary under [the] labor contract" between plaintiff and defendant unions, referred to below. The order also continued the restraint of July 1, 1960, pendente lite. No affidavits were submitted on the motion for summary judgment. Consequently, we must accept as true all the well-pleaded facts of the verified complaint, and the inferences that may legitimately and reasonably be drawn therefrom.

I.
Plaintiff employs some 892 persons at its Burlington, N.J., plant. Of these, about 680, constituting plaintiff's production employees, are members of defendant United Steelworkers of America, CIO-AFL and its affiliate, defendant Local Union No. 2026. Defendant Borkowski is a member of both unions.
*387 On August 20, 1959 the then existing collective bargaining agreement between plaintiff and the unions expired. As a result, the unions called a strike in which the production employees, including defendant Borkowski, joined. See our earlier opinion in U.S. Pipe & Foundry Co. v. United Steelworkers of America, etc., 59 N.J. Super. 240 (1960). The strike was settled when, after extended conferences, a new collective bargaining agreement was executed May 25, 1960. The production employees returned to work the next day.
By mutual consent the new agreement was predated to August 21, 1959, and specifically made effective as of that date. The complaint incorporates the new agreement by reference, so that the whole of the agreement was before the trial court at the time of the motion for summary judgment. Article V provides for a grievance and arbitration procedure available to all production employees:
"A. Should differences arise as to the meaning and application of the provisions of this agreement or should any employee feel unjustly treated because of the application of any provision, there shall be no interruption of work. Such matters shall be resolved in the following manner:

* * * * * * * *
5. If the grievance is not settled in step 4, then within fifteen (15) working days it shall be submitted to arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association."
Further, Article VII, dealing with discharge and suspension cases, provides:
"If an employee feels he has been unjustly discharged or suspended, a written grievance shall be submitted to the company within five (5) working days of the discharge. Within three (3) working days of the receipt of the grievance the company and the Grievance Committee shall review the grievance. A bona fide effort shall be made to settle the matter; but if not resolved within said three (3) working days, the grievance shall be referred to arbitration within fifteen (15) calendar days. Any grievance not processed within the time stated above shall be considered waived."
*388 The complaint alleges that during negotiations leading to the new collective bargaining agreement plaintiff, at a negotiation meeting on December 2, 1959, notified the bargaining representatives of the unions, in substance, that it had terminated Borkowski's employment, "meaning in fact, that he had been discharged." It is pleaded that plaintiff had terminated the employment because it considered Borkowski's "acts of violence, assaults, threats and bad conduct during the progress of the strike [as] inimical to his continued employment, and * * * such that they could not be tolerated or condoned by it."
After Borkowski's discharge, and during the subsequent negotiations to settle the strike, plaintiff alleges that it consistently refused to rehire him or to arbitrate his status, and held to this position despite the fact that the union representatives submitted his rehiring or the arbitration of his status as one of the issues preventing settlement of the strike. The complaint goes on to allege that at a negotiation meeting held April 5, 1960 the union representatives agreed with plaintiff to drop their demands as to Borkowski; at meetings subsequently held on May 12 and 21, Borkowski's status was neither raised nor discussed; and on the latter date the representatives on both sides agreed that everything in dispute had been resolved, no mention being made of Borkowski.
Finally, plaintiff alleges that despite all this it received a letter from the international union on June 9, 1960 enclosing a demand for arbitration sent to defendant American Arbitration Association appealing a grievance signed by Borkowski. A few days later it received a letter from the Association enclosing a list from which an arbitrator might be selected and informing plaintiff that if the list was not returned by a date fixed, an arbitrator would be appointed. Plaintiff replied, stating that Borkowski was not an employee and refusing to arbitrate because he had been discharged for cause. The Association then informed plaintiff that it would have to proceed with the matter unless otherwise *389 requested by both parties or the moving party was stayed by order of an appropriate court.
The complaint charges, "according to the legal effect," that under the true construction of the labor contract in the light of the circumstances attending its negotiation and formulation, Borkowski is not its employee; the new agreement and its arbitration provisions were not intended for his benefit; there is no obligation on its part to arbitrate his status under the contract and, finally, there is no arbitrable issue as to him. Plaintiff demanded judgment: (a) construing and interpreting the agreement in the light of the surrounding circumstances, and determining and declaring that it was not the intention of the parties thereto that Borkowski should be benefitted thereunder; (b) determining and declaring that his status is not an arbitrable issue under the agreement; (c) restraining defendants pendente lite from proceeding to arbitrate Borkowski's status as though he were a beneficiary under the agreement; and (d) perpetually restraining them from attempting to make any findings or award with respect to his status which would be inimical to plaintiff's interests.
In opposing defendants' motions to dissolve the temporary restraint and for summary judgment, plaintiff argued that the sole issue was "whether or not the employment, or the failure to employ * * * Borkowski is an arbitrable issue, or one for the courts." It urged that the agreement was predated to August 21, 1959 for the purpose of continuing the life insurance and hospitalization benefits of its employees during the strike; that the demand for arbitration of Borkowski's discharge had been raised during the negotiations and dropped prior to the final settlement of all disputes between the parties and the execution of the new collective bargaining agreement on May 25, 1960, and therefore he was not a beneficiary thereunder. In the course of the ensuing colloquy the trial judge indicated that he was entitled to inquire into the reasons for predating the collective bargaining agreement and whether Borkowski should *390 be excluded from its benefits. In denying defendants' motions and continuing the restraint against arbitration the trial judge concluded that it was for the court to resolve whether there were any rights that should be determined by it under the existing contract, and that the matter should be held for full hearing.
In contending that summary judgment should have been entered in their favor, defendants argue that (1) the collective bargaining agreement, back-dated to August 21, 1959, was unambiguous and inured to Borkowski's benefit, and the court may not change its terms; (2) any difference as to the meaning and application of the provisions of the agreement are for the arbiter and not the courts, and (3) the union representatives had neither the power nor authority to agree to deny the benefits of the agreement to Borkowski, and plaintiff may not avail itself of what they did.

II.
Plaintiff argues that since none of the beneficiaries of the collective bargaining agreement were named therein, it is essential that they be ascertained outside the terms of the contract itself. It urges that evidence of the negotiations leading up to the agreement must be considered in determining whether Borkowski is such a beneficiary. Thus, it is claimed, there was a genuine issue of fact which could not be resolved on defendants' motion for summary judgment.
In advancing this argument plaintiff relies on what was said regarding the interpretation of integrated agreements in cases like Casriel v. King, 2 N.J. 45 (1949); Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293 (1953); and Newark Publishers' Ass'n v. Newark Typographical Union No. 103, 22 N.J. 419 (1956). But in the latter case Justice Heher, who had also written for the court in the other two cases, said:
"Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement, even where the contract *391 is free from ambiguity, not for the purpose of changing the writing, but to secure light by which its actual significance may be measured. Such evidence is adducible simply as a means of interpreting the writing,  not for the purpose of modifying its terms, but to assist in determining the meaning of what has been said. So far as the evidence tends to show, not the sense of the writing, but an intention wholly unexpressed, it is irrelevant. Atlantic Northern Airlines v. Schwimmer, 12 N.J. 293 (1953). We are not at liberty to introduce and effectuate some supposed unrevealed intention. The actual intent of the parties is ineffective unless made known in some way in the writing. It is not the real intent but the intent expressed or apparent in the writing that controls. Corn Exchange National Bank & Trust Co. v. Taubel, 113 N.J.L. 605 (E. & A. 1934). And the construction of the integration is the exclusive province of the judge, unless an issue of fact be raised by evidence aliunde. New York Sash & Door Co., Inc. v. National House & Farms Association, 131 N.J.L. 466 (E. & A. 1944)." (22 N.J., at page 427) (Italics ours)
Admittedly, there is no provision in the new labor contract exempting or excluding defendant Borkowski, or indeed any particular production employee, from its benefits or any of its provisions. It does not follow, however, that Borkowski's status must be determined by the circumstances surrounding and the negotiations leading up to the final contract. It is clear that the beneficiaries of the agreement are identified as a class  plaintiff's "employees." Thus, the preamble of the agreement states that it is the intent and purpose of the parties that the agreement "promote and improve industrial and economic relations between the employees and the Company." (Italics ours) Article I states that the company recognizes the international union, or any successor it might designate, as the sole collective bargaining agent for all its employees, and the company agrees not to interfere with the right of its employees to become members of the union.
And although the "employees" are not individually named, Article I defines "employees" as the "production and maintenance employees in the Company's plant at Burlington, New Jersey, and excludes foremen, assistant foremen, supervisors having the power to hire and discharge or effectively *392 recommend same, clerical workers, guards and weighman guards." The plaintiff itself states that Borkowski, prior to his purported discharge, was a production employee in plaintiff's Burlington plant, and does not claim that he came within any of the named exceptions.
We do not have here a dispute as to whether Borkowski was an employee within the clear purport of the definition contained in Article I of the agreement. The complaint concedes this. The meaning of the word "employees" is not ambiguous or in dispute, as has sometimes been the case with integrated agreements where circumstances surrounding the execution were held admissible in aid of ascertaining the meaning of a particular word or phrase, e.g., Deerhurst Estates v. Meadow Homes, Inc., 64 N.J. Super. 134 (App. Div. 1960), certification denied 34 N.J. 66 (1961) ("tentative approval"). What plaintiff is actually contending for when it argues that the labor contract must be interpreted in light of the surrounding circumstances and negotiations, is that the exclusion clause of Article I must, in addition to the supervisory and administrative personnel there specified by class, be extended to include Borkowski. If such evidence were permitted so as to add yet a further exception to the definition of "employees," the court would be effectuating an intention wholly unexpressed in the integrated agreement. Such an unexpressed intention is irrelevant under the objective theory of contracts. See the Atlantic Northern Airlines, Newark Publishers' Ass'n and Deerhurst Estates cases, cited above. The actual intention of the parties is ineffective unless in some way made known in the writing. We find absolutely no basis in the agreement from which it might be inferred that the parties intended to exclude Borkowski from its benefits.
There is a further consideration. Article XVII of the collective bargaining agreement expressly provided that
"A. No agreement, understanding, alteration, or variation of the agreement, terms, provisions, covenants, or conditions contained herein shall bind the parties hereto unless made and executed in *393 writing by the parties hereto. Any and all agreements, written and verbal, previously entered into between the parties hereto are in all things mutually cancelled and superseded by this agreement. There are no side agreements or verbal understandings relative to this agreement and the present contract between the parties is as set forth herein. The terms and provisions of this agreement cannot be amended except by execution of the supplemental agreements signed by the Union and the Company.
B. Any subject matter not mentioned herein is hereby specifically waived."
Contractual language could hardly be plainer than this.
Certainly this is an appropriate case to apply the maxim that the court cannot make a new contract for the parties, but can only enforce the contract the parties themselves made. When the terms of a contract are clear, it is the function of the court to enforce it as written and not to make a better contract for either of the parties. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960).

III.
It remains to be considered whether Borkowski's grievance  that he was unjustly discharged for allegedly unlawful conduct  is subject to arbitration under the collective bargaining agreement. We have already quoted from Article V of the agreement, which provides that should "differences arise as to the meaning and application" of its provisions, or should "any employee feel unjustly treated because of the application of any provision," such matters are to be resolved by arbitration if the grievance is not settled in step 4 of the grievance procedure. We have also referred to Article VII which provides that an employee who feels he has been unjustly discharged may submit a written grievance to the company, and if the settlement efforts are ineffective, the grievance is to be referred to arbitration. No claim is made that Borkowski's grievance was not processed within the time limits fixed by Article VII.
It is now settled, by virtue of the policy evinced by section 301(a) of the Labor Management Relations Act, *394 29 U.S.C.A. § 185, that Congress has precluded the states from applying state law in cases involving questions of arbitration under provisions of collective bargaining agreements. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1956). Neither side claims the contrary.
It is not contended that Article V(A), providing that differences as to the meaning and application of the provisions of the agreement shall be submitted to arbitration, is sufficient to exclude from court determination not merely the decision of the merits of the grievance, but also the question of its arbitrability. Such a contention would be without merit. In United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the court had before it collective bargaining agreements with clauses substantially similar to the one in the agreement before us, requiring arbitration of differences as to the meaning and application of the provisions of the agreement. In Warrior the court noted in footnote 7, at page 583 of 363 U.S., at page 1353 of 80 S.Ct.:
"It is clear that under both the agreement in this case and that involved in American Manufacturing Co., ante, p. 564 [363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403], the question of arbitrability is for the courts to decide. Cf. Cox, Reflections Upon Labor Arbitration, 72 Harv. L. Rev. 1482, 1508-1509. Where the assertion by the claimant is that the parties excluded from court determination not merely the decision of the merits of the grievance but also the question of its arbitrability, vesting power to make both decisions in the arbitrator, the claimant must bear the burden of a clear demonstration of that purpose."
Hence, when defendants moved for summary judgment in the Chancery Division, the question for the trial judge was whether Borkowski's grievance of having been unjustly discharged should be submitted to arbitration. The inquiry *395 did not involve any genuine issue of material fact. It was solely a question of law, to be resolved on the face of the agreement in the light of existing law. The focus of attention must have been, as it is here, on Article VII of the agreement, fully quoted under Point I, above.
The United States Supreme Court has in three recent cases acknowledged the vital importance of the arbitration process in the labor-management area, distinguished labor arbitration from commercial arbitration, and strictly delimited the area of court supervision of the arbitration process. United Steelworkers of America v. American Mfg. Co., and United Steelworkers of America v. Warrior & Gulf Navigation Co., above, and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). These cases make clear that it is the federal policy to promote industrial stabilization through collective bargaining agreements. Inclusion in such an agreement of a provision for arbitration of grievances is a major factor in achieving industrial peace. In the field of labor relations, arbitration is the substitute for industrial strife; the hostility which courts might in the past have shown toward arbitration of commercial contracts has no place in that field. The grievance and arbitration provisions of a collective bargaining agreement embrace all questions on which the parties may disagree, except for matters which the parties specifically exclude. As was said in Warrior:
"* * * An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.[7]" (Footnote 7 is quoted above.) (363 U.S., at pages 582-583, 80 S.Ct., at page 1353)
and
"* * * In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can *396 prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.

* * * * * * * *
The judiciary sits in these cases to bring into operation an arbitral process which substitutes a regime of peaceful settlement for the older regime of industrial conflict. Whether contracting out in the present case violated the agreement is the question. It is a question for the arbiter, not for the courts." (363 U.S., at pages 584-585, 80 S.Ct., at page 1354)
Borkowski was not excluded from the agreement between management and the unions. It is beyond dispute that Article VII makes compellable the arbitration of his present grievance that he was unjustly discharged.
We pass by the fact that the complaint, in alleging that plaintiff had terminated Borkowski's employment "by reason of the fact that it considered that his acts of violence, assaults, threats and bad conduct during the progress of said strike were inimical to his continued employment by it," pleaded mere conclusions and not facts  as plaintiff readily admits. But whether plaintiff is right or wrong in its characterization of Borkowski's acts and in discharging him for that reason or, on the contrary, Borkowski is right or wrong in claiming that his actions were proper and his discharge unjust, is not for the court to determine, but for the arbitrator. This is made clear by what the Supreme Court had to say in the American Mfg. Co. case, above, 363 U.S., at pages 567-568, 80 S.Ct., at page 1346:
"* * * The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's *397 judgment, when it was his judgment and all that it connotes that was bargained for.
The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware."
Plaintiff readily acknowledges the thrust of the American Mfg. and Warrior cases and that they "seriously curtail the area of influence by the courts on labor grievances and disputes, whether legal or frivolous in nature, in favor of the arbitral process." It seeks, however, to escape the force of those decisions by arguing that what the Supreme Court said can have no application to lawless acts which could not possibly have been within the contemplation of the parties. Congress, it is claimed, sought to protect only lawful conduct, so that it would be implicit under a collective bargaining agreement calling for arbitration of an allegedly wrongful discharge of an employee, that the discharge to be arbitrated arise in the pursuit of lawful conduct, and not as a result of lawlessness. But this begs the question. It presupposes that Borkowski's conduct was unlawful, when the entire issue in this case is, who should decide whether or not it was  the court or an arbitrator?
In support of its contention, plaintiff relies upon N.L.R.B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627 (1938), and the decision of our own Supreme Court in Public Utility Construction, etc., Local No. 274 v. Public Service Elec. & Gas Co., 26 N.J. 145 (1958). Neither case lends support to the proposition that an employer's allegation of unlawful conduct by a striking employee of itself works a forfeiture of the employee's rights under the collective bargaining agreement, or that an employer may not agree to arbitrate allegations of misconduct. In each case there had been a prior determination *398 of the unlawfulness of the employees' acts. In the Public Utility case the parties voluntarily appeared before the State Board of Mediation for an arbitration proceeding to determine the propriety of the suspension of three employees because of their unlawful activities during the progress of the strike. The arbitration resulted in a unanimous decision that the suspensions were proper. The Supreme Court held that the determination left the employees without any further rights, and they could not invoke the arbitration provisions in the bargaining agreement to determine the propriety of their employer's refusal to reinstate them after discharge. The strike-settling collective bargaining agreement in that case specifically provided for arbitration as to suspension, but not discharge.
In Fansteel the United States Supreme Court held the N.L.R.B. to be without statutory authority to compel the reinstatement of striking employees discharged for sufficient cause. The N.L.R.B. had there ordered reinstatement after first taking testimony which definitely established that the employees were guilty of unlawful acts. The case says no more than this: when it is established that a striking employee is guilty of unlawful conduct, he loses all his rights as an employee.
Thus, in both Public Utility and Fansteel there was a definitive finding of unlawful conduct. No tribunal, judicial, administrative or arbitral, has made such a determination here.
At the oral argument the issue posed by plaintiff's counsel was in terms of public policy: a person acting in violation of law should not have the benefit of arbitration. This would turn the question of contract construction (arbitrability) into an issue of "morality," to employ counsel's word. As noted, strong reliance for this view is placed on the Fansteel and Public Utility cases. They are entirely distinguishable. Further, the Supreme Court decisions in the American Mfg. Co. and Warrior cases compel adherence to the present agreement, reached by the parties after prolonged *399 arm's-length negotiations, that an employee who "feels unjustly discharged" may have the benefit of arbitration after grievance procedures have failed. For a critique of the Fansteel and Public Utility rationale, see Blumrosen, "Public Policy Considerations in Labor Arbitration Cases," 14 Rutgers L. Rev. 217 (1960), particularly page 239, footnote 89, and pages 245 and 254-5.
If it were to be held that an employee forfeits his right to arbitrate a discharge based on the mere claim of his employer of unlawful conduct during a strike, then the protection afforded by Article VII would indeed be illusory. An employee's right to have his discharge submitted to arbitration cannot depend on whether the employer chooses to allege that he participated in unlawful conduct. There must be proof more definite than this.
There is, of course, no valid reason why an employer should not, as plaintiff did here, agree to arbitrate a grievance of unjust discharge based on allegedly illegal activity. If the right to arbitrate a grievance like Borkowski's is to have any meaning whatsoever under the agreement before us, it must include the right to arbitrate the discharge regardless of what grounds the employer unilaterally chooses to assign for its action. To hold otherwise would be contrary to the decisions in the American Mfg. Co. and Warrior cases.

IV.
R.R. 4:58-2 permits a defendant to move at any time, with or without supporting affidavits, for summary judgment in his favor. Under R.R. 4:58-3 summary judgment is to be granted upon the pleadings, depositions and admissions on file, together with the affidavits, if any, where they show palpably that there is no genuine issue as to any material fact challenged, and that the moving party is entitled to a judgment as a matter of law. Bare conclusions in the pleadings, without factual support in tendered *400 affidavits, will not defeat a meritorous application for summary judgment. Gherardi v. Trenton Board of Education, 53 N.J. Super. 349, 358 (App. Div. 1958). Summary judgment is not to be denied if the papers pertinent to the motion show palpably the absence of any issue of material fact, although the allegations of the pleadings, standing alone, may raise such an issue. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-5 (1954).
Considering the case before us in that light, we find that the collective bargaining agreement of August 21, 1959 inures to the benefit of defendant Borkowski. The agreement expressly provided that any grievance dealing with an "unjust discharge" should be submitted to arbitration. The fact that plaintiff alleges that the discharge was by reason of Borkowski's unlawful conduct is immaterial. The grievance must be submitted to arbitration. There being no genuine dispute as to any material fact, summary judgment should have been granted and the temporary restraint dissolved.
Accordingly, the Chancery Division order under review is reversed with the direction that summary judgment be entered for defendants and the temporary restraint dissolved, thus leaving them free to submit Borkowski's grievance to arbitration.