**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2478-15T1

RONALD SASALA,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY; STATE OF
NEW JERSEY, DEPARTMENT OF THE
TREASURY; OFFICE OF THE
MIDDLESEX COUNTY PUBLIC DEFENDER'S
OFFICE; RICHARD D. BARKER; HOWARD
BARMAN; and JOSEPH M. MAZRAANI,

    Defendants-Respondents.

_____

        Argued September 27, 2017 — Decided July 25, 2018

        Before Judges Fuentes, Manahan and Suter.

        On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3532-14.

        Audwin F. Levasseur argued the cause for appellant (Thomas R. Ashley, attorney; Thomas R. Ashley, on the brief).

        Ashley Gagnon, Deputy Attorney General, argued the cause for respondents (Christopher S. Porrino, Attorney General, attorney; Lisa A. Puglisi, Assistant Attorney General, of counsel; Ashley Gagnon, on the brief).

PER CURIAM

Plaintiff Ronald Sasala filed a civil complaint against the State of New Jersey, Department of the Treasury, the Middlesex County Public Defender's Office, Deputy Public Defender Richard D. Barker, Assistant Deputy Public Defender Howard Barman, and Assistant Deputy Public Defender Joseph M. Mazraani,[1] alleging breach of contract, legal malpractice, and seeking exoneration damages pursuant to N.J.S.A. 52:4C-1 to -7.  This civil action is predicated on the material facts that formed the basis for the disposition of an underlying criminal prosecution.  We will thus describe the procedural history of the criminal case before directly addressing the issues related to this civil litigation.

I

On May 22, 2007, a Middlesex County Grand Jury returned an indictment against Sasala charging him with three counts of first-degree carjacking, N.J.S.A. 2C:15-2, second-degree kidnapping, N.J.S.A. 2C:13-1(b), and fourth-degree false swearing, N.J.S.A. 2C:28-2(a).  Assistant Deputy Public Defender Howard Barman represented Sasala in this case.  The State was

---

[1]  At all times relevant to this case, these attorneys were employed by the Office of the Public Defender established by the Legislature under N.J.S.A. 2A:158A-1 to -25.  The mission of the Public Defender is "to provide for the realization of the constitutional guarantees of counsel in criminal cases for indigent defendants . . . ."  N.J.S.A. 2A:158A-1.

represented by Assistant Prosecutor Thomas Daniel Carver, Jr., of the Middlesex County Prosecutor's Office. At a deposition taken on April 25, 2015, in connection to this civil action, Carver testified that the first plea offer he made to Sasala to resolve all of the pending criminal charges was for him to plead guilty to one count of first-degree carjacking. The State would recommend that the court sentence him to a term of twenty years, subject to an eighty-five percent period of parole ineligibility and five years of parole supervision as mandated by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Sasala rejected this plea offer.

Represented by Barman, Sasala entered into a negotiated agreement with the State on May 1, 2008, through which he agreed to plead guilty to second-degree kidnapping. In exchange, the State agreed to dismiss the remaining counts in the indictment and recommend that the court sentence defendant to a term of eight years, subject to an eighty-five percent period of parole ineligibility and three years of parole supervision, as mandated by NERA. At his deposition taken on June 2, 2015, Barman provided the following explanation for his decision to advise Sasala to accept the State's plea offer:

> [H]e wanted to plead to theft of a car, the State was not willing to give him that, so the discussion between him and I was[:] "If you go to trial you have the videotape [of the incident], you have the pregnant victim who's

on her knees next to the car, and you say you didn't push her.[2] The only way I put that on is if you testify, and if you testify your prior record comes out. That's a difficult situation.

After the plea hearing, Sasala informed Barman that he wanted to withdraw his guilty plea. Faced with this conflict of interest, the Public Defender's Office assigned pool attorney[3] Joseph M. Mazraani to represent Sasala in the presentation of his motion to withdraw his guilty plea at the November 19, 2008 sentencing hearing.[4] With the trial judge's consent, Mazraani questioned Sasala under oath concerning his reasons for wanting to withdraw his guilty plea:

> Q. You're alleging that Mr. Barman did not effectively represent you?
>
> A. I would say that, yes.
>
> Q. Tell the [c]ourt why.
>
> A. I had asked for a lot of the things that weren't in my discovery. They were not included as the Grand Jury transcripts. I'd ask for a videotape that the discovery says they have which never even turned up. I had asked for my statements, my alleged statements

---

[2] The victim claimed Sasala pushed her out of the car.

[3] See N.J.S.A. 2A:158A-7(c), (d); see also State v. Van Ness, 450 N.J. Super. 470, 490 n.9 (App. Div. 2017).

[4] The trial court conducted a hearing to decide Sasala's motion to withdraw his guilty plea. This hearing occurred nearly three months before the Supreme Court decided State v. Slater, 198 N.J. 145 (2009).

I had given to the police. Never. I asked [him for] statements from the victims. Never heard from him. I asked him many times. I never got these things. These are things that would [have] help[ed] me make a sound decision.

When Mazraani asked Sasala why he did not bring these concerns to the judge's attention at the time of the plea hearing, Sasala responded:

I felt I was in a position where there was a no win situation. Mr. Barman was telling me I have to take this plea or else I'll never see my kid again. I was shaking my head. [The judge] stopped me. I knew what I saying was wrong. I was shaking my head. I knew what I was saying wasn't the truth. I'm not guilty of these charges.

The judge denied Sasala's motion to withdraw his guilty plea. He rejected as not credible Sasala's claim that he "was doing what [Barman] told [him] to do." The record shows the judge took umbrage with Sasala's belated attempt to withdraw his guilty plea by accusing Barman of coaching him to lie under oath. The judge characterized Sasala's allegations against Barman as "disingenuous." Despite his strong disapproval of Sasala's actions, the judge sentenced him to a term of six years imprisonment subject to NERA; this was two years less than the eight-year term of imprisonment authorized by the plea agreement. Sasala did not appeal the sentence or the judge's decision to deny his motion to withdraw his guilty plea.

On February 1, 2011,[5] Sasala filed a post-conviction relief (PCR) petition alleging that both Barman and Mazraani provided ineffective assistance. The PCR court denied Sasala's PCR petition without conducting an evidentiary hearing. Sasala appealed the PCR's order to this court. In the course of reviewing Sasala's appeal, this court provided the following description of the incident that gave rise to the criminal charges against him:

> [O]n December 31, 2006 . . . Mauricio Alexander Lopez drove Daisy and Sonia Estrada to a laundromat in Perth Amboy in a Honda Accord. Daisy was nine months pregnant at the time. Lopez parked and began carrying bags of laundry inside, while Daisy and Sonia remained in the Honda with the engine running. [Sasala] approached Lopez and offered to help him carry the laundry bags. After all of the laundry had been carried in, [Sasala] ran to the Honda, entered the driver's side door, and pushed Daisy, who was exiting the passenger's side door, from the car. He then drove away with Sonia still in the backseat. Initially, Sonia was too afraid to say anything to [Sasala], but she eventually started yelling. [Sasala] pulled over and allowed her to leave. Sonia fled back to the laundromat, where she provided police with a description of [Sasala]. She told the responding officers that [Sasala] "did not realize that she was in the back seat until she screamed," at which point he "ordered her to get out of the car[.]"

---

[5] The date indicated here is taken from paragraph twenty-seven of plaintiff's verified complaint. Sasala did not include in the appellate record a filed copy of the PCR petition. In the interest of clarity, we note that this court's unpublished opinion reversing the PCR court's denial of Sasala's petition states Sasala filed the PCR petition "in September 2010." State v. Sasala, No. A-2207-11 (App. Div. June 20, 2013) (slip op at 7).

> Later that day, Lopez contacted police and reported that he had seen [Sasala]. Police responded, and Lopez positively identified [Sasala], who was then placed under arrest.

> [Sasala, slip op. at 1-2.]

This court noted that the factual basis Sasala provided at the plea hearing in response to Barman's questions did not support his guilty plea for the crime of second-degree kidnapping, as defined in N.J.S.A. 2C:13-1(b). Specifically, "defendant was asked if he was guilty of second-degree kidnapping but was not asked for a factual basis that included the required predicate purpose." Id. at 20. We thus "revers[ed] the order denying [Sasala's] petition for PCR and remand[ed] for an evidentiary hearing on his claim of ineffective assistance of counsel and a hearing to determine whether he should be permitted to withdraw his guilty plea." Ibid.

On remand, Sasala negotiated a new plea agreement with the State and pled guilty to second-degree robbery, N.J.S.A. 2C:15-1. Pursuant to the terms of the plea agreement, the court sentenced Sasala to a three-year term of imprisonment subject to NERA. This resulted in a de facto time-served sentence because by this time, Sasala had served over five years of his original six-year sentence. In light of this negotiated disposition, the trial court did not make any final determination concerning whether

Sasala received ineffective assistance of counsel from Barman or Mazraani.

II

Against this procedural backdrop, we will now address the issues raised by Sasala in this appeal. In support of their motion for summary judgment, defendants argued to the Law Division that Sasala was judicially estopped from seeking any civil relief under any of the theories of liability stated in his complaint. Defendants argued that the legal malpractice claim subsumed the breach of contract claim. Furthermore, by agreeing to plead guilty to second-degree robbery, plaintiff was barred from bringing a claim under the Mistaken Imprisonment Act, N.J.S.A. 52:4C-1 to -7. Finally, defendants argued that no reasonable jury could find that any alleged legal malpractice committed by Barman and Mazraani proximately caused Sasala compensable harm.

The motion judge agreed that the legal malpractice claim subsumed the breach of contract claim and that Sasala is barred from asserting a claim under the Mistaken Imprisonment Act because he pled guilty to the crime for which he was convicted. In this appeal, plaintiff argues he is entitled to seek damages under this statute because he was "exonerated" of second-degree kidnapping. For the first time on appeal, plaintiff also argues that he does not need to present expert testimony to prove defendants committed

legal malpractice or that their professional negligence proximately caused him harm. We reject these arguments and affirm.

We review the grant of a motion for summary judgment de novo. Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013). A court must grant summary judgment only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We must determine whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

To recover damages under the Mistaken Imprisonment Act, a claimant must establish the following facts by clear and convincing evidence:

> a. That he was convicted of a crime and subsequently sentenced to a term of imprisonment, served all or any part of his sentence; and
>
> b. He did not commit the crime for which he was convicted; and

> c. He did not commit or suborn perjury, fabricate evidence, or by his own conduct cause or bring about his conviction. Neither a confession or admission later found to be false shall constitute committing or suborning perjury, fabricating evidence, or causing or bringing about his conviction under this subsection; and
>
> d. <u>He did not plead guilty to the crime for which he was convicted</u>.
>
> [N.J.S.A. 52:4C-3 (emphasis added).]

The record here is undisputed that Sasala cannot meet these statutory criteria. Sasala pled guilty to the crime of second-degree kidnapping. He did not file a direct appeal challenging his conviction or sentence. This court's decision related to Sasala's PCR petition did not exonerate him of second-degree kidnapping. We remanded the matter to the PCR court to conduct an evidentiary hearing on his claim of ineffective assistance of counsel and to determine "<u>whether he should be permitted to withdraw his guilty plea</u>." <u>Sasala</u>, slip op. at 20 (emphasis added). On remand, Sasala negotiated a new plea agreement and voluntarily pled guilty to second-degree robbery. It is important to state clearly that this court's decision to reverse the PCR court's denial of Sasala's petition and remand the matter for an evidentiary hearing did not vacate the conviction for second-degree kidnapping. Sasala's decision to pled guilty to second-degree robbery in return for the State agreeing to vacate his

conviction for second-degree kidnapping obviated the need for the PCR court to carry out our instructions.

Sasala's legal malpractice claims are equally without merit. In a legal malpractice action predicated on a defense counsel's conduct, a plaintiff must prove actual damages. Grunwald v. Bronkesh, 131 N.J. 483, 495 (1993). "The test is not whether defense counsel could have done better, but whether he met the constitutional threshold for effectiveness." State v. Nash, 212 N.J. 518, 543 (2013). Sasala has not presented any competent evidence that Barman did not effectively represent him during the plea negotiations. The burden of proof also requires Sasala to show that "the Government was willing to extend a plea offer to him . . . that was more favorable than the one he accepted and that his sentence would have been less than the one he received." Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014). Here, Sasala must prove that at the time he pled guilty to second-degree kidnapping, but for Barman's professional negligence, the State would have offered him a plea agreement with more favorable terms.

Sasala's self-serving account of the event that led to his indictment on three counts of first-degree carjacking and second-degree kidnapping does not constitute evidence of malpractice by either Barman or Mazraani. See Brae Asset Fund, LP v. Newman, 327

N.J. Super. 129, 134 (App. Div. 1999) (quoting U.S. Pipe & Foundry Co. v. Am. Arbitration Ass'n, 67 N.J. Super. 384, 399-400 (App. Div. 1961)) ("The law is well settled that '[b]are conclusions in the pleadings without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment.'"). Indeed, as Barman's deposition testimony indicates, the State had a strong case that Sasala committed first-degree carjacking and intentionally pushed a pregnant woman in the course of committing this offense. The rejection of the State's plea offer at the time would have exposed Sasala to a potential thirty-year term of imprisonment subject to the parole restrictions under NERA. See N.J.S.A. 2C:15-2(b).

We have previously held that to recover damages for an alleged invalid conviction "the plaintiff must first prove 'that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" Alampi v. Russo, 345 N.J. Super. 360, 367 (App. Div. 2001) (quoting Heck v. Humphrey, 512 U.S. 477, 486 (1994)). Sasala has not produced any evidence to satisfy any of these requirements.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2478-15T1