**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2439-24

JANE DOE (a minor child), and
K.B.M. and S.B.M. (parents
and guardians of Jane Doe),

     Plaintiffs,

v.

PARAMUS BOARD OF
EDUCATION,

     Defendant-Respondent,

and

N.A. (minor child), I.A.
(individually and as parent and
guardian for minor child N.A.),
and J.C. (individually and as parent
and guardian for minor child N.A.),

     Defendants-Appellants,

and

N.A. (minor child), I.A. (individually
and as parent and guardian for
minor child N.A.), and J.C.
(individually and as parent and

guardian for minor child N.A.),

Third-Party Plaintiffs,

v.

BOROUGH OF PARAMUS,
NEW JERSEY (a New Jersey
Municipal Corporation), K.B.M.
(individually), and S.B.M.
(individually),

Third-Party Defendants.

_____

Submitted April 23, 2026 – Decided May 1, 2026

Before Judges Mawla, Marczyk, and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5001-21.

Shapiro Croland Reiser Apfel & Di Iorio LLP, attorneys for appellants (Joshua M. Lurie and Adam P. Burns, on the briefs).

McGivney, Kluger, Clark & Intoccia, PC, attorneys for respondent Paramus Board of Education (Derrick A. Grant, of counsel and on the brief).

PER CURIAM

Appellants N.A. and his parents, I.A. and J.C., appeal from: a June 14, 2024 order granting respondent Paramus Board of Education summary judgment and dismissing appellants' claims with prejudice; a July 19, 2024 order denying

appellants' motion for reconsideration; and a February 28, 2025 order denying appellants' motion for relief from the summary judgment order. We affirm.

This appeal arises from a lawsuit initially filed against appellants and respondent by plaintiffs Jane Doe and her parents, alleging N.A. perpetrated harassment, intimidation, and bullying (HIB) against Doe based on her race and sex while they were middle school students. The parties resolved plaintiffs' lawsuit, and plaintiffs are not part of this appeal. However, appellants asserted crossclaims against respondent, alleging: violations of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50; violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213; and negligence, vicarious liability, and respondeat superior claims based on N.A.'s disability.

N.A. is diagnosed with Autism Spectrum Disorder (mild), Attention Deficit Hyperactivity Disorder (ADHD), Generalized Anxiety Disorder, and Post-Traumatic Stress Disorder. He has an Individualized Education Program (IEP) with the classification of Emotion Regulation Impairment. As a result, he is qualified for various school-based services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415.

3

Appellants' crossclaims alleged respondent failed to take any action against Doe—despite the fact N.A. and his mother made complaints against Doe over several years—and instead retaliated against N.A. The LAD and ADA claims alleged respondent: discriminated against N.A. based on his ADHD; failed to adequately investigate HIB complaints made by and against N.A.; retaliated against N.A. by failing to find his actions were manifestations of his disability; and unfairly disciplined him. Appellants claimed respondent was negligent for: breaching its duties under the Anti-Bullying Bill of Rights Act (ABR), N.J.S.A. 18A:37-13.2 to -37; failing to take appropriate action when appellants made complaints against Doe; conducting inadequate investigations and substantiating claims made by Doe against N.A. without complying with the ABR; and retaliating against N.A. for HIB complaints made by and against him involving Doe. The crossclaims also asserted respondent was vicariously liable under the doctrine of respondeat superior for its employees' discrimination and negligence.

The facts showed Doe filed six claims against N.A. for HIB and respondent's anti-bullying specialist investigated and substantiated HIB based upon Doe's race and gender. Appellants did not appeal this finding. The specialist also conducted at least two HIB investigations where N.A. accused

4

Doe of being the aggressor but found Doe's alleged actions were not motivated by an actual or perceived characteristic of N.A. and, instead, were based on a history of conflict between both students.

Respondent's anti-bullying specialist stated she considers whether a student's behavior manifested from their disability when conducting HIB investigations. The school held IEP meetings after N.A.'s HIB incidents.

N.A.'s mother requested he be transferred out of Doe's classes after the first HIB investigation, and she eventually had him transferred to a different middle school in the district. N.A. never reported he was bullied to his teachers or school administrators. He never spoke about his disability with Doe. N.A. recalled being suspended one day for fighting at his first middle school. He was later suspended for two days for fighting at the middle school to which his mother had arranged his transfer. The fighting incidents did not involve Doe.

In January 2023, while this matter was pending, N.A. got into a physical altercation at his high school, again not involving Doe. Upon his return to school after serving a short suspension for a separate incident, N.A. told his mother he was reluctant to go back because another student, X.Y., had threatened him. That day, an altercation ensued during lunch. A video showed

5

N.A. approaching X.Y., X.Y. saying something to N.A., and N.A. punching X.Y. several times before school staff could intervene.

In February 2023, the child study team (CST) conducted a manifestation determination review of N.A.'s actions vis-à-vis X.Y. If the CST had determined N.A.'s behavior was a manifestation of his disability, it would have conducted a functional behavioral assessment and implemented a behavioral intervention plan. However, it concluded N.A.'s actions were premeditated and spontaneous, thus not a manifestation of his disability. This permitted respondent to discipline N.A. the same way it would have, had he not been receiving special education, resulting in his indefinite suspension.

N.A.'s mother claimed the discipline imposed against her son after his altercations was in retaliation for Doe's and appellants' lawsuits. However, she had no evidence of retaliation. N.A.'s father claimed respondent unfairly disciplined N.A. after Doe filed her lawsuit but never reported N.A. was bullied.

Doe stated N.A. told her about his ADHD diagnosis in the fifth grade, but they did not speak about it again. She never made comments about his ADHD or his background in any respect.

Following discovery, respondent moved for summary judgment on appellants' crossclaims. Appellants' opposition to the summary judgment

6

motion did not include a statement of material facts, but they argued respondent retaliated against N.A. by punishing him with suspensions and out-of-school placements, which created an issue of material fact for the jury to decide. Judge John D. O'Dwyer heard the motions and issued a detailed written opinion granting respondent summary judgment.

The judge dismissed appellants' LAD claim because they did not submit evidence showing "N.A. was subjected to severe or pervasive [HIB] due to his disability." He observed neither N.A. nor his mother reported "any bullying incidents related to his ADHD before the lawsuit." Respondent conducted two HIB investigations regarding allegations N.A. made against Doe and concluded the claims were unfounded. "At no time prior to the filing of the lawsuit did N.A., or anyone on his behalf, . . . claim that [respondent] treated N.A. unfairly."

The judge also dismissed the ADA claim because appellants did not present "evidence showing [respondent] acted with deliberate indifference or that N.A. faced significant harassment due to his disability." It was undisputed the CST conducted IEP meetings as early as the sixth grade. The IEP "was reviewed and updated each year as needed." Neither of N.A.'s parents expressed dissatisfaction with the CST, N.A.'s IEP, nor reported bullying until he was

A-2439-24

suspended for fighting. The judge found they "did not identify any specific instances of bullying related to [N.A.'s] ADHD."

The negligence claims, including for vicarious liability and respondeat superior, were dismissed because they were predicated on the argument respondents breached their duties under the ABR. The judge observed "New Jersey law does not recognize independent tort claims based solely on violations of the ABR[ and] . . . the ABR does not set a standard of care for tort liability."

Appellants argued respondent violated the IDEA because it failed to determine whether N.A.'s conduct was a manifestation of his disability. The judge found appellants never pled a claim under the IDEA or attempted to amend their pleadings to include the claim, and it was "being introduced improperly at the summary judgment stage." But "even if the IDEA's requirements were not fully met, this does not inherently prove violations of the LAD or ADA, as the IDEA's scope is different from these statutes." He noted "the IDEA addresses inappropriate educational placement decisions, irrespective of discrimination." However, "a failure to conduct manifestation determination meetings, while a technical violation under the IDEA, does not necessarily imply violations of the LAD or ADA because it does not demonstrate discriminatory intent behind the decisions made by [respondent]."

A-2439-24

The evidence showed respondent conducted manifestation determination meetings. The judge pointed out the IDEA requires these meetings "only . . . when there is a decision to alter the placement of a disabled student due to a breach of the student conduct code." Respondent was not liable because, even though there were six confirmed incidents of HIB involving N.A., "none of these instances led to a change in [his] placement." N.A. was never expelled from the district and his transfers—first out of classes with Doe and then to a different school—came at the request of his mother. Therefore, N.A.'s change in placement did not happen due to being disciplined by respondent. "Additionally, when N.A. faced suspensions for altercations unrelated to . . . Doe, [respondent] held manifestation determination meetings as required."

The judge found summary judgment in respondent's favor was also warranted because appellants lacked an expert to explain "[t]he complexity of evaluating a school district's response to HIB complaints [, which] often requires expert insight into educational standards and practices." A jury would need to assess the adequacy of respondent's response given the "mutual bullying allegations and N.A.'s special education needs."

Appellants moved for reconsideration. They argued the judge failed to consider their response to respondent's statement of material facts and thus had

an incomplete factual picture. Summary judgment was not warranted because salient facts were in dispute. Appellants also challenged the judge's finding they needed an expert. They argued the judge ignored the fact respondent retaliated by disciplining N.A. after appellants filed a complaint with the New Jersey Division of Civil Rights.

The judge made oral findings. He reiterated appellants did not comply with the Rules of Court requiring they file a counter statement of material facts and instead "chose only to file responses [to respondent]'s statement of facts, which . . . contained only some limited additional citations to the record." The judge recapitulated his detailed findings of fact and conclusions of law from the summary judgment ruling, and concluded appellants had not shown what facts or law he overlooked and denied the motion.

During the proceedings before Judge O'Dwyer, appellants filed an administrative appeal from N.A.'s suspension for fighting with X.Y., which was heard in the Office of Administrative Law (OAL) by an administrative law judge (ALJ). The hearing before the ALJ was to address whether respondent correctly determined N.A.'s behavior was not a manifestation of his disability. The ALJ found the evidence did not show N.A. had premeditated an attack on X.Y. The fight ensued because X.Y. called N.A. a derogatory name. The ALJ credited the

testimony of N.A.'s mother that he was afraid to return to school because X.Y. and his friends had threatened him. She testified she brought N.A. into school anyway and informed the school about the situation and N.A.'s misgivings.

The ALJ concluded school officials failed to take precautions to protect N.A. after his mother expressed her concerns. No one checked on N.A. after his mother dropped him off at school or prior to the incident with X.Y.

The ALJ found respondent's conclusion N.A.'s "conduct was not a manifestation of his disability[] was based on a misunderstanding of what triggered [his] actions" during the incident with X.Y. N.A.'s conduct "was the direct result of [respondent]'s failure to implement [his] IEP," which required an aide to be present, including during lunchtime.

Armed with the ALJ's decision, appellants moved to vacate the summary judgment granted to respondent pursuant to Rule 4:50-1(b) and (f). They argued the ALJ's findings and ruling were new evidence and there were multiple relevant documents used in the OAL hearing that were never provided in discovery and could have affected the summary judgment decision.

The judge concluded the ALJ's ruling was not dispositive because the ALJ simply found respondent erred in addressing the fighting incident. But respondent's error did not equate with a discriminatory intent. "In fact, . . . the

great bulk of the claims in the case dealt with issues that [were] wholly unrelated and separate from the decision by" the ALJ.

I.

Appellants argue summary judgment should not have been granted and the denial of the motion for reconsideration was erroneous because there were material facts in dispute showing Doe had bullied N.A. They claim the judge misunderstood the law as requiring individuals with disabilities to inform others about their disabilities to assert an LAD claim. However, it was obvious N.A. was in a protected class due to his disability and bullied because of his disability. Yet respondent credited Doe's unfounded allegations and retaliated against N.A.

Appellants assert the judge misunderstood their reliance on the IDEA and ABR as standalone claims when, really, they were a means of demonstrating retaliation under the LAD. The retaliation was evident because respondent began disciplining N.A. after Doe sued and escalated the discipline. Appellants point to the ALJ's ruling as proof of the facts the judge disregarded. The IDEA was also relevant because respondent failed to provide N.A. with a free and appropriate public education (FAPE), which established the ADA violation.

Appellants contend the negligence claim was improperly dismissed because the judge relied exclusively on the ABR as the standard to establish

negligence. Rather, negligence could be established through the ADA, IDEA and LAD, which along with the ABR, imposed a duty of care on respondent to provide N.A. with a FAPE. The ABR expressly states it does not bar redress under other available law. N.J.S.A. 18A:37-18. It must therefore be read in pari materia with the ADA, IDEA, and LAD.

Relatedly, appellants argue it was error to dismiss their negligence claim because the record established a breach of duty without the need for an expert. They point out the Supreme Court has not mandated experts and instead held, "expert evidence may be required to establish the reasonableness of a school district's response to student-on-student harassment." L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ., 189 N.J. 381, 409 (2007). Appellants claim an expert was not required because they established their LAD and ADA claims by showing respondent failed to provide N.A. with a FAPE by accepting Doe's allegations without considering his disability and then retaliating against him.

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent

evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). "If there is no genuine issue of material fact, [the court] must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). "Summary judgment should be granted . . . 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

A party opposing summary judgment must file a responsive statement either admitting or disputing the movant's statement of material facts in the form prescribed by Rule 4:46-2(a). R. 4:46-2(b). The opposing party must provide

14

evidence "beyond mere speculation and fanciful arguments." Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009)) (internal quotation marks omitted). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005) (citations omitted). "If the evidence [submitted by the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). "[B]are conclusions . . . without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999) (quoting U.S. Pipe & Foundry Co. v. Am. Arb. Ass'n, 67 N.J. Super. 384, 399-400 (App. Div. 1961)).

We review the grant or denial "of a motion for summary judgment de novo, applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531,

15

552 (2019) (alteration in original) (quoting <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

A reconsideration motion should only be granted in "those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." <u>Cummings v. Bahr</u>, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting <u>D'Atria v. D'Atria</u>, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). We review the denial of a motion for reconsideration for an abuse of discretion. <u>Id.</u> at 389.

> [I]n the educational context, to state a claim under the LAD, an aggrieved student must allege discriminatory conduct that would not have occurred "but for" the student's protected characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment, and that the school district failed to reasonably address such conduct.
>
> [<u>L.W.</u>, 189 N.J. at 402-03.]

A school district may be found liable for peer-on-peer harassment, which "creates a hostile educational environment when the school district knew or should have known of the harassment, but failed to take action reasonably

16

calculated to end the harassment." Id. at 407. However, a school district is not required to "purge" itself of all peer-on-peer harassment to avoid liability, rather it must "implement effective preventive and remedial measures to curb severe or pervasive discriminatory mistreatment." Ibid.

Liability under the ADA operates in a similar manner, requiring evidence demonstrating a defendant's actions or omissions were due to the plaintiff's disability. In an educational context, a plaintiff must establish the defendant was deliberately indifferent to HIB. S.H. by Durell v. Lower Merion Sch. Dist., 729 F.3d 248, 263 (3d Cir. 2013).

Pursuant to these principles, we affirm for the reasons expressed in Judge O'Dwyer's thorough and well-written opinion granting summary judgment. We add the following comments.

Without citations to the record, appellants broadly argue the elements of the LAD and ADA were satisfied because Doe bullied and harassed N.A. based upon his disability. However, our de novo review of the record does not support this contention. The interactions between N.A. and Doe had nothing to do with his disability and instead revolved around N.A. calling Doe derogatory names. Therefore, the record does not support a finding that, but for N.A.'s disability, the facts would not have transpired as they did.

We likewise affirm the judge's ruling appellants could not establish negligence as a matter of fact or law. An expert is necessary "where the matter to be addressed is so esoteric that the average juror could not form a valid judgment as to whether the conduct of the professional was reasonable." Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996). Expert testimony is not required where the duty of care owed is "so basic that it may be determined by the court as a matter of law." Ibid. A basic case "involves situations where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." Rosenberg by Rosenberg v. Cahill, 99 N.J. 318, 325 (1985).

As pled, appellants' negligence claim was based entirely on a breach of the ABR. The ABR expressly states: "This act does not create or alter any tort liability." N.J.S.A. 18A:37-18. Therefore, as a matter of law, the ABR could not form a basis for a negligence claim.

Regardless, an expert was required to establish respondent's duty of care and explain the attendant breach of duty through violation of the LAD, ADA, and IDEA. No amount of common sense would enable a lay jury to understand the: applicable legal standards; the scope of a school's duty, including whether and how to conduct an HIB investigation; and the interplay between a school

18

district's obligation to assure a FAPE and ensure school safety through appropriate student discipline. The ALJ's ruling would not suffice in lieu of an expert because it addressed the discrete issue of whether an incident unrelated to Doe was borne of N.A.'s disability. He did not adjudicate the broader and complex factual and legal issues involving Doe's claims and whether respondent's response to them constituted retaliation against N.A. These issues were not before the ALJ.

Therefore, we conclude summary judgment was properly granted in respondent's favor. The subsequent denial of reconsideration was likewise not an abuse of discretion.

## II.

Appellants challenge the denial of their motion for relief from the summary judgment for the same reasons articulated to Judge O'Dwyer. They claim the ALJ's ruling constituted newly discovered evidence and exceptional circumstances under Rule 4:50-1(b) and (f), respectively, because he found respondent changed N.A.'s placement, failed to implement his IEP, and incorrectly decided N.A.'s actions were not manifestations of his disability.

"A motion under Rule 4:50-1 is addressed to the sound discretion of the trial court, which should be guided by equitable principles in determining

19

whether relief should be granted or denied." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). "The decision granting or denying an application to open a judgment will be left undisturbed unless it represents a clear abuse of discretion." Ibid.

To obtain relief pursuant to Rule 4:50-1(b) based on newly discovered evidence, the movant "must demonstrate 'that the evidence would probably have changed the result, that [the evidence] was unobtainable by the exercise of due diligence for use at the trial, and that the evidence was not merely cumulative.'" DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 264 (2009) (quoting Quick Chek Food Stores v. Twp. of Springfield, 83 N.J. 438, 445 (1980)). Our Supreme Court has stated: "No categorization can be made of the situations which would warrant redress under [Rule 4:50-1](f). . . . [T]he very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." Id. at 269-70 (2009) (omission and second alteration in original) (quoting Ct. Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)).

The ALJ's decision was not determinative of the legal issues decided in the summary judgment motion and would not have changed the result to warrant relief under Rule 4:50-1(b). The discrete issue decided by the ALJ also did not

establish the exceptional circumstances required by <u>Rule</u> 4:50-1(f) to undo the summary judgment ruling. Appellants' LAD, ADA, and negligence claims failed because they were unsupported by the facts and evidence necessary to establish liability as a matter of law. The denial of the <u>Rule</u> 4:50-1 motion was a proper exercise of discretion.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2439-24